Luke F. Zadkovich
Eva-Maria Mayer
Jonas Patzwall
ZEILER FLOYD ZADKOVICH (US) LLP
215 Park Ave South, 11th Floor
New York, NY 10003
Telephone: (617) 943 7957
luke.zadkovich@zeilerfloydzad.com
eva.mayer@zeilerfloydzad.com
jonas.patzwall@zeilerfloydzad.com

*ATTORNEYS FOR PLAINTIFF*
*WELLBRED TRADING DMCC*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

WELLBRED TRADING DMCC,

               Plaintiff,

-against-

PENFIELD MARINE UK LTD.

               Defendant.

Civil Action No.: 21-CV-_____

**VERIFIED COMPLAINT IN ADMIRALTY**

Plaintiff, Wellbred Trading DMCC ("Wellbred" or "Plaintiff"), by its attorneys, Zeiler Floyd Zadkovich (US) LLP, files this Verified Complaint in Admiralty against Defendant, Penfield Marine UK Ltd. ("Penfield UK" or "Defendant") (collectively, the "Parties"), and upon information and belief, alleges as follows:

## JURISDICTION

1. This action is filed as an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and Rule B of the Supplemental Rules of Admiralty or Maritime Claims.

2. Subject matter jurisdiction is appropriate pursuant to 28 U.S.C. § 1333.

1

## THE PARTIES

3. Plaintiff was and still is a foreign business entity organized and existing under the laws of Dubai with offices and places of business in: Singapore; Dubai, United Arab Emirates; and Geneva, Switzerland.

4. Upon information and belief, Penfield UK was and continues to be a foreign business entity organized and existing under the laws of a foreign country, with an office and place of business located in United Kingdom. The confirmation recapitulating the relevant contractual terms (i.e., "Recap") identifies Penfield UK as the disponent owner of the vessel MV JAG LEELA, IMO No. 9568184 (the "Vessel").

## UNDERLYING EVENTS

5. On or about April 25, 2021, Wellbred (as voyage charterers) entered into an amended ASBATANKVOY form voyage charter with Penfield UK for shipment of a minimum of 80,000 MT of fuel oil from Fujairah, United Arab Emirates to a location in a discharge range from Singapore to Tanjung Pelepas, Malaysia, (the "Charterparty"). The Recap was issued on or about April 26, 2021, and the Charterparty and Recap are attached as **Exhibit A**.

6. The terms of the Charterparty state:

Loading Range: 1 Port(s) Fujairah

Discharge Range: 1 Port(s) / Ship-to-Ship - Singapore – Tanjung Pelepas

7. Clause 1 of the Charterparty includes a warranty by the owners of the Vessel that, in pertinent part, the Vessel shall "forthwith proceed, as ordered on signing Bills of Lading, direct to the Discharge Port(s)".

8. Further, the Charterparty identifies Penfield UK as disponent owner and Penfield Tankers (Aframax) LLC ("Penfield Aframax") (an interested non-party to this action) as commercial operator.

9. During the progression of the underlying dispute, English counsel for the vessel interests identified Penfield Aframax as acting as disponent owner under the Charterparty in correspondence between the Parties. *See* **Exhibit B** ("we have been instructed by Penfield Tankers (Aframax) LLC ("Disponent Owners")").

10. The Charterparty terms state that "freight [is] payable to owners' designated bank account in United States dollars via telegraph transfer" noting Penfield Aframax as the beneficiary of the designated account:

> Beneficiary Bank: JPMorgan Chase Bank, NY
> Address: New York, New York 10017
> ABA Routing: XXXXX0021
> Beneficiary: Penfield Tankers Aframax LLC
> Account Number: XXXXX2172

11. Thus, not only was Penfield Aframax allegedly acting for Penfield UK under the Charterparty, but it was also collecting freight and holding such monies on behalf of and for Penfield UK in its bank account. Monies belonging to Penfield UK.

12. The Charterparty Recap includes a "Pandemic Clause" at Sections 3 and 5 which state that:

> (3) Notwithstanding the foregoing, any delay shall not count as laytime and/or time on demurrage under this charter to the extent that it is caused or prolonged because of measures or restrictions which apply to, or are directed at the vessel or her crew either due to: (i) the crew having contracted, or being suspected of having contracted, corona virus, or (ii) official measures or restrictions at the nominated port concerning countries, ports or other locations the vessel and/or crew has visited, called at or traded/transited through at any time prior to tendering NOR at the first load port, or thereafter if for owners matters.
>
> […]

3

(5) Any delay, costs or expenses caused or incurred in relation to corona virus, or suspected corona virus, onboard the vessel shall be for owner's account.

13. On or about April 26, 2021, Defendant communicated to Wellbred that the Vessel intended to call at Cochin, India to undergo a crew change. This port call had not been previously agreed between the Parties. That same day Wellbred objected by email to the planned crew change due to COVID-19 restrictions and requirements at the discharge port which would be violated by the Vessel's intended crew change at Cochin, India.

14. Over Wellbred's objection, on information and belief, on or about May 5, 2021, the Vessel arrived at Cochin, India, deviating from the voyage under the terms of the Charterparty.

15. On or about May 4, 2021, Chevron Singapore Pte Ltd. ("Chevron") (the receiver of the cargo aboard the Vessel) approved the Vessel for discharge at the Penjuru Terminal, Singapore. Such approval did not account for the disputed crew change.

16. On or about May 5, 2021, Wellbred informed Chevron that Defendant intended to perform a crew change in Cochin, India. Chevron made clear that it would revoke its acceptance of the Vessel should the crew change take place due to the COVID-19 restrictions in place at the discharge port in Singapore.

17. On or about May 6, 2021, Wellbred issued a notice to Defendant, as well as head owners of the Vessel, Great Eastern Shipping Company Ltd. ("Head Owners"), expressly putting them on notice that Chevron would reject the Vessel should the crew change take place at Cochin. Wellbred further reminded Defendant and Head Owners that all requests to perform the crew change had been rejected and put Defendant and Head Owners on notice that Wellbred would hold them liable for all costs, including ship-to-ship operations, related to discharge of the cargo in the

event that the crew change took place. Despite the notice and additional objections, the crew change took place at Cochin that same day.

18. On or about May 7, 2021, Wellbred was informed that despite its protests and objections, and in violation of the notices provided, the crew change had taken place.

19. On or about May 10, 2021, following the receipt of the details of the crew change, Chevron revoked its acceptance of the Vessel.

20. In an attempt to avoid additional costs, Wellbred sought, on a number of occasions, to persuade Chevron to accept the Vessel, notwithstanding the wrongful deviation. Chevron maintained its rejection of the Vessel.

21. On or about May 18, 2021, the cargo was ultimately discharged at Kukup Anchorage, Malaysia. A second vessel, the MT EUROGLORY, had to be hired to perform the discharge operations and carry out ship-to-ship operations at additional costs to Wellbred. The total additional costs to Wellbred as a result of these operations was at least **USD 532,495.53**, consisting of the following: (1) EUROGLORY hire costs of USD 255,000; (2) STS operations and port costs of USD 112,263.70; (3) Bunker (vessel fuel) costs of USD 123,851.16; and (4) Legal costs of USD 41,380.67. This amount qualifies as provable damages as a result of a breach as described in Clause 23 of the Charterparty. *See* **Exhibit A** (Clause 23 "Damages for breach of this Charter shall include all provable damages, and all costs of suit and attorney fees incurred in any action hereunder").

22. The Vessel's deviation from the intended voyage in violation of the Charterparty resulted in other additional costs to Wellbred, which are significant, but have not yet been quantified.

23. Head Owners have provided security for claims under the bills of lading issued for the subject cargo. However, that is a different contract to the Charterparty and such security does not respond to claims made under the Charterparty. Despite multiple requests, Head Owners have not provided any security for claims arising under the Charterparty. Penfield UK has so far ignored requests to provide security for the claims made under the Charterparty.

24. Pursuant to the Charterparty, "this contract shall be governed by and construed in accordance with English law and any dispute arising out of or in connection with this contract shall be referred to arbitration in London in accordance with the Arbitration Act [of] 1996 or any statutory modification or re-enactment thereof save to the extent necessary to give effect to the provision of this clause." (*See* **Exhibit A**, "Law and Litigation Clause"). Further, pursuant to Clause 59 of the Charterparty, and in accordance with English law pursuant to the Arbitration Act of 1996, Wellbred is entitled to recover costs of arbitration and litigation, including attorneys' fees, costs, and expenses incurred in connection with the anticipated arbitration proceedings.

25. Wellbred expressly reserves all rights to arbitrate the merits of the underlying dispute in London and brings the instant action solely to obtain *quasi in rem* jurisdiction over Defendant together with security for its underlying claims (inclusive of estimated interest, estimated attorneys' fees, and estimated arbitration costs).

**MARITIME CAUSE OF ACTION**
**(Breach of Maritime Contract)**

26. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 25 of this Complaint as if the same were set forth here at length.

27. Under Clause 1 of the Charterparty, Defendant had an obligation to "forthwith proceed, as ordered on signing Bills of Lading, direct to the Discharge Port(s)".

28. Defendant breached, amongst other things, its obligation under the Charterparty when it failed to forthwith proceed direct to the discharge port, but instead deviated from the agreed upon voyage to perform a crew change in Cochin, India.

29. Defendant further breached its obligation under the Charterparty by failing to pay the damages incurred due to such deviation.

30. As a result of the Vessel's deviation, Plaintiff sustained damages: (a) in the principal amount of at least USD 532,496.00; (b) additional significant damages yet to be quantified; (c) plus estimated interest; and (d) estimated attorney's fees and arbitration costs of at least USD 250,000 (*This is a conservative fees and costs estimate, and Plaintiff reserves all rights to seek and recover the full quantum of its damages, fees, costs, interest, and other expenses in arbitration in England*).

## RULE B ATTACHMENT
### (Request for Order of Maritime Attachment)

31. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 25 of this Complaint as if the same were set forth here at length.

32. As set forth above, the underlying merits of the disputes arising under the Charterparty are to be resolved in London arbitration. Plaintiff expressly reserves all its rights to arbitrate the merits of the underlying dispute accordingly and brings this action solely to obtain *quasi in rem* jurisdiction over Defendant, together with security for damages (inclusive of interest, costs and attorney's fees as aforesaid), pursuant to the provision of Supplemental Rule B of the Federal Rules of Civil Procedure ("Rule B").

33. Upon information and belief, and after an investigation into the available facts (as is more fully described in the Declaration of Eva-Maria Mayer [the "Mayer Declaration"]), Defendant cannot be found within the District within the meaning of Supplemental Rule B.

34. Plaintiff is informed that Defendant has, or will shortly have, property subject to attachment within this District held in the hands of garnishees. *See Mayer Declaration.*

35. Specifically, Defendant has property in the form of assets held in a bank account maintained by JPMorgan Chase Bank, N.A. located at 270 Park Ave., New York, NY 10017 ("Chase Bank"). The named beneficiary of the bank account is Penfield Aframax, and such account is referenced in the Charterparty as the account to which Plaintiff was to make any payments under the Charterparty (the "Account"). (*See* **Exhibit A**). Plaintiff has made previous payments into the Account totaling at least USD 910,767.10. (*See* **Exhibit C**). Plaintiff therefore believes that the Account holds funds owned by or owing to Defendant Penfield UK.

36. It is Plaintiff's understanding, that Penfield UK has full control over Penfield Aframax and the Account based on the terms of the Charterparty and payments made to the Account under the Charterparty, whereby Wellbred paid Penfield Aframax in satisfaction of payments owed to Penfield UK under the Charterparty and that at least in part the funds held in such Account are Penfield UK's property. (*See* **Exhibit B**).

37. On information and belief, Defendant has a similar arrangement for at least 22 other Aframax vessels, where the Penfield Aframax bank account at JPMorgan Chase Bank is used for monies received for and on behalf of Penfield UK. (*See* **Exhibit D**).

38. Additionally and/or in the alternative, the funds held in this bank account are owed by Penfield Aframax to Penfield UK under contractual or other corporate arrangements. Such funds are attached on this basis, irrespective of whether there is a general or specific agency between Penfield Aframax and Penfield UK.

39. Based on the address listed in the Charterparty, amongst other locations, Chase Bank is a corporation found within the District and subject to service of process as a garnishee in this matter.

40. Plaintiff hereby seeks an Order from this Court directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Supplemental Rule B, attaching, *inter alia*, any assets of Defendant held by garnishees located within the District, specifically Chase Bank, for the purposes of obtaining *quasi in rem* jurisdiction over Defendant and to secure Plaintiff's claims, as described above.

**WHEREFORE**, Plaintiff prays as follows:

1. That process in due form of law according to the practice of this Court may be issued against Penfield UK;

2. That since Defendant cannot be found within the District the Court, in accordance with the provisions of Rule B of the Supplemental Rules of Admiralty or Maritime Claims, this Court direct the issuance of Process of Maritime Attachment and Garnishment attaching all assets within the District owned by Penfield UK, including but not limited to such property contained in the bank account of beneficiary Penfield Tankers (Aframax) LLC located with JP Morgan Chase Bank N.A. at 217 Park Ave., New York, New York 10017, or in which said entity has direct beneficial interest, up to the amount of USD 532,496.53, plus additional damages yet to be quantified; plus estimated interest; plus estimated attorney's fees and arbitration costs so as to establish *quasi in rem* jurisdiction over the Defendant and to serve as security for subsequent enforcement of any arbitral awards and/or resulting judgments; and

3.      That the Court retain *quasi in rem* jurisdiction for the ultimate enforcement of any resulting arbitral awards and/or resulting judgments, and grant such other, further, and different relief as may be just, proper, and equitable.

Dated: October 5, 2021
      New York, NY

Respectfully submitted,

By: *Eva-Maria Mayer*
    Eva-Maria Mayer
    Luke F. Zadkovich
    Jonas Patzwall
    ZEILER FLOYD ZADKOVICH (US) LLP
    215 Park Ave South, 11th Floor
    New York, NY 10003
    Telephone: (617) 943 7957
    eva.mayer@zeilerfloydzad.com
    luke.zadkovich@zeilerfloydzad.com
    jonas.patzwall@zeilerfloydzad.com
    *Counsel for Plaintiff*

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I, Joshua Chong Yu Wit, declare and state under penalty of perjury that the foregoing is true and correct:

1. I am the Chartering Manager at Wellbred Trading DMCC and am duly authorized to make this Declaration on Plaintiff's behalf.

2. I have read the foregoing Verified Complaint and know the contents thereof, and that the same is true to the best of my knowledge, information and belief, except as to matters therein stated to be alleged on information and belief, and as to those matters I believe them to be true.

3. The sources of my information and the grounds for my belief are communications and information received by me, together with my knowledge and experience regarding the matters addressed by the Verified Complaint.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: October 5, 2021
Singapore

By: _____

Joshua Chong Yu Wit
Chartering Manager

## **DECLARATION**

Eva-Maria Mayer, pursuant to the provisions of 28 U.S.C. section § 1746, declares and states as follows:

1. I am an attorney admitted to practice before this Court and an associate with the firm of Zeiler Floyd Zadkovich (US) LLP, attorneys for Plaintiff, and I am familiar with the facts of this matter.

2. To the best of my information and belief, the above-named Defendant cannot be found within the District within the meaning of Supplemental Rule B for Admiralty or Maritime Claims.

3. I searched the New York Department of State Division of Corporations website (https://apps.dos.ny.gov/publicInquiry/) for the Defendant. This database did not contain any records of the Defendant showing that the Defendant has authority to do business in New York.

4. Further, I searched additional, online directories of New York in addition to running generic search engine (Google.com, e.g.) searches and found no listings of the Defendant in this District.

5. I therefore respectfully request, on behalf of the Plaintiff, that the Court issue an order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment with respect to the Defendant's property within the District.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: October 5, 2021
New York, NY 10003

By: /s/ Eva-Maria Mayer
Eva-Maria Mayer