**EXHIBIT A**

**Association of Ship Brokers**
**& Agents (U.S.A.), Inc.**

**CODE WORD FOR THIS**
**CHARTER PARTY:**

**October 1977**

**ASBATANKVOY**

# TANKER VOYAGE CHARTER PARTY

### PREAMBLE

Place                              Date

IT IS THIS DAY AGREED between

chartered owner/owner (hereinafter called the "Owner") of the

SS/MS                                                                        (hereinafter called the "Vessel")

and                                                                          (hereinafter called the "Charterer")

that the transportation herein provided for will be performed subject to the terms and conditions of this Charter Party, which includes this Preamble and Part I and Part II. In the event of a conflict, the provisions of Part I will prevail over those contained in Part II.

### PART I

A.   Description and Position of Vessel:

     Deadweight:                              tons (2240 lbs.) Classed:

     Loaded draft of Vessel on assigned summer freeboard                              ft.                              in. in salt water.

     Capacity for cargo:                              tons (of 2240 lbs. each)                              % more or less, Vessel's option.

     Coated:            [ ] Yes            [ ] No

     Coiled:            [ ] Yes            [ ] No            Last two cargoes:

     Now:                                          Expected Ready:

B.   Laydays:

     Commencing:                       Cancelling:

C.   Loading Port(s):

     Charterer's Option

D.   Discharging Port(s):

     Charterer's Option

E.   Cargo:

     Charterer's Option

F.   Freight Rate:                              per ton (of 2240 lbs. each).

G.   Freight Payable to:                              at

H.   Total Laytime in Running Hours:

I.   Demurrage per day:

J.   Commission of            % is payable by Owner to

     on the actual amount freight, when and as freight is paid.

K.   The place of General Average and arbitration proceedings to be London/New York (strike out one).

L.   Tovalop: Owner warrants Vessel to be a member of TOVALOP scheme and will be so maintained throughout duration of this charter.

M.   Special Provisions:

IN WITNESS WHEREOF, the parties have caused this Charter, consisting of a Preamble, Parts I and II, to be executed in duplicate as of the day and year first above written.

Witness the signature of:

By:

Witness the Signature of:

By:

This Charterparty is a computer generated copy of ASBATANKVOY form, printed under licence from the Association of Ship Brokers & Agents (U.S.A.), Inc., using software which is the copyright of Strategic Software Limited. It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted as having been made by the licensee or end user as appropriate and not by the author.

## PART II

1.    WARRANTY - VOYAGE - CARGO. The vessel, classed as specified in Part I hereof, and to be so maintained during the currency of this Charter, shall, with all convenient dispatch, proceed as ordered to Loading Port(s) named in accordance with Clause 4 hereof, or so near thereunto as she may safely get (always afloat), and being seaworthy, and having all pipes, pumps and heater coils in good working order, and being in every respect fitted for the voyage, so far as the foregoing conditions can be attained by the exercise of due diligence, perils of the sea and any other course of whatsoever kind beyond the Owner's and/or Master's control excepted, shall load (always afloat), from the factors of the Charterer a full and complete cargo of petroleum and/or its products in bulk, not exceeding what she can reasonably stow and carry over and above her bunker fuel, consumable stores, boiler feed, culinary and drinking water, and complement and their effects (sufficient space to be left in the tanks to provide for the expansion of the cargo), and being so loaded shall forthwith proceed, as ordered on signing Bills of Lading, direct to the Discharging Port(s), or so near thereunto as she may safely get (always afloat), and deliver said cargo. If heating of the cargo is requested by the Charterer, the Owner shall exercise due diligence to maintain the temperatures requested.

2.    FREIGHT. Freight shall be at the rate stipulated in Part I and shall be computed on intake quantity (except deadfreight as per Clause 3) as shown on the Inspector's Certificate of Inspection. Payment of freight shall be made by Charterer without discount upon delivery of cargo at destination, less any disbursements or advances made to the Master or Owner's agents at ports of loading and/or discharge and cost of insurance thereon. No deduction of freight shall be made for water and/or sediment contained in the cargo. The services of the Petroleum Inspector shall be arranged and paid for by the Charterer who shall furnish the Owner with a copy of the Inspector's Certificate.

3.    DEADFREIGHT. Should the Charterer fail to supply a full cargo, the Vessel may, at the Master's option, and shall, upon request of the Charterer, proceed on her voyage, provided that the tanks in which cargo is loaded are sufficiently filled to put her in seaworthy condition. In that event, however, deadfreight shall be paid at the rate specified in Part I hereof on the difference between the intake quantity and the quantity the Vessel would have carried if loaded to her minimum permissible freeboard for the voyage.

4.    NAMING LOADING AND DISCHARGE PORTS.

(a)    The Charterer shall name the loading port or ports at least twenty-four (24) hours prior to the Vessel's readiness to sail from the last previous port of discharge, or from bunkering port for the voyage, or upon signing this Charter if the Vessel has already sailed. However, Charterer shall have the option of ordering the Vessel to the following destinations for wireless orders:

On a voyage to a port or ports in:

ST.KITTS                 Carribean or U.S.  Gulf loading port(s)
PORT SAID              Eastern Mediterranean or Persian Gulf loading port(s)
                              (from ports west of Port Said.)

(b)    If lawful and consistent with Part I and with the Bills of Lading, the Charterer shall have the option of nominating a discharging port or ports by radio to the Master on or before the Vessel's arrival at or off the following places:

Place                        On a voyage to a port or ports in:
LAND'S END           United Kingdom/Continent (Bordeaux/Hamburg range)
                              or Scandinavia (including Denmark)
SUEZ                       Mediterranean (from Persian Gulf)
GIBRALTAR             Mediterranean (from Western Hemisphere).

(c)    Any extra expense incurred in connection with any change in loading or discharging ports (so named) shall be paid for by the Charterer and any time thereby lost to the Vessel shall count as used Laytime.

5.    LAYDAYS. Laytime shall not commence before the date stipulated in Part I, except with the Charterer's sanction. Should the Vessel not be ready to load by 4:00 o'clock P.M. (local time) on the cancelling date stipulated in Part I, the Charterer shall have the option of cancelling this Charter by giving Owner notice of such cancellation within twenty-four (24) hours after such cancellation date; otherwise this Charter to remain in full force and effect.

6.    NOTICE OF READINESS. Upon arrival at customary anchorage at each port of loading or discharge, the Master or his agent shall give the Charterer or his agent notice by letter, telegraph, wireless or telephone that the Vessel is ready to load or discharge cargo, berth or no berth, and laytime, as hereinafter provided, shall commence upon the expiration of six (6) hours after receipt of such notice, or upon the Vessel's arrival in berth (i.e., finished mooring when at a sealoading or discharging terminal and all fast when loading or discharging alongside a wharf), whichever first occurs. However, where delay is caused to Vessel getting into berth after giving notice or readiness for any reason over which Charterer has no control, such delay shall not count as used laytime.

7.    HOURS FOR LOADING AND DISCHARGING. The number of running hours specified as laytime in Part I shall be permitted the Charterer as laytime for loading and discharging cargo; but any delay due to the Vessel's condition or breakdown or inability of the Vessel's facilities to load or discharge cargo within the time allowed shall not count as used laytime. If regulations of the Owner or port authorities prohibit loading or discharging of the cargo at night, time so lost shall not count as used laytime; if the Charterer, shipper or consignee prohibits loading or discharging at night, time so lost shall count as used laytime. Time consumed by the vessel in moving from loading or discharge port anchorage to her loading or discharge berth, discharging ballast water or slops, will not count as used laytime.

8.    DEMURRAGE. Charterer shall pay demurrage per running hour and pro rata for a part thereof at the rate specified in Part I for all time that loading and discharging and used laytime as elsewhere herein provided exceeds the allowed laytime elsewhere herein specified. If, however, demurrage shall be incurred at ports of loading and/or discharge by reason of fire, explosion, storm or by a strike, lockout, stoppage or restraint of labor or by breakdown of machinery or equipment in or about the plant of the Charterer, supplier, shipper or consignee of the cargo, the rate of demurrage shall be reduced one-half of the amount stated in Part I per running hour or pro rata for part of an hour for demurrage so incurred. The Charterer shall not be liable for any demurrage for delay caused by strike, lockout, stoppage or restraint of labor for Master, officers and crew of the Vessel or tugboat or pilots.

9.    SAFE BERTHING - SHIFTING. The vessel shall load and discharge at any safe place or wharf, or alongside vessels or lighters reachable on her arrival, which shall be designated and procured by the Charterer, provided the Vessel can proceed thereto, lie at, and depart therefrom always safely afloat, any lighterage being at the expense, risk and peril of the Charterer. The Charterer shall have the right of shifting the Vessel at ports of loading and/or discharge from one safe berth to another on payment of all towage and pilotage shifting to next berth, charges for running lines on arrival at and leaving that berth, additional agency charges and expense, customs overtime and fees, and any other extra port charges or port expenses incurred by reason of using more than one berth. Time consumed on account of shifting shall count as used laytime except as otherwise provided in Clause 15.

10.    PUMPING IN AND OUT. The cargo shall be pumped into the Vessel at the expense, risk and peril of the Charterer, and shall be pumped out of the Vessel at the expense of the Vessel, but at the risk and peril of the Vessel only so far as the Vessel's permanent hose connections, where delivery of the cargo shall be taken by the Charterer or its consignee. If required by Charterer, Vessel after discharging is to clear shore pipe lines of cargo by pumping water through them and time consumed for this purpose shall apply against allowed laytime. The Vessel shall supply her pumps and the necessary power for discharging in all ports, as well as necessary hands. However, should the Vessel be prevented from supplying such power by reason of regulations prohibiting fires on board, the Charterer or consignee shall supply, at its expense, all power necessary for discharging as well as loading, but the Owner shall pay for power supplied to the Vessel for other purposes. If cargo is loaded from lighters, the Vessel shall furnish steam at Charterer's expense for pumping cargo into its Vessel, if required by the Charterer, providing the Vessel has facilities for generating steam and is permitted to have fires on board. All overtime of officers and crew incurred in loading and/or discharging shall be for account of the Vessel.

11.    HOSES: MOORING AT SEA TERMINALS. Hoses for loading and discharging shall be furnished by the Charterer and shall be connected and disconnected by the Charterer, or, at the option of the Owner, by the Owner at the Charterer's risk and expense. Laytime shall continue until the hoses have been disconnected. When Vessel loads or discharges at a sea terminal, the Vessel shall be properly equipped at Owner's expense for loading or discharging at such place, including suitable ground tackle, mooring lines and equipment for handling submarine hoses.

12.    DUES - TAXES - WHARFAGE. The Charterer shall pay all taxes, dues and other charges on the cargo, including but not limited to Customs overtime on the cargo, Venezuelan Habilitation Tax, C.I.M. Taxes at Le Havre and Portuguese Imposto de Comercio Maritime. The Charterer shall also pay all taxes on freight at loading or discharging ports and any unusual taxes, assessments and governmental charges which are not presently in effect but which may be imposed in the future on the Vessel or freight. The Owner shall pay all dues and other charges on the Vessel (whether or not such dues or charges are assessed on the basis of quantity of cargo), including but not limited to French droits de quai and Spanish derramas taxes. The Vessel shall be free of charges for the use of any wharf, dock, place or mooring facility arranged by the Charterer for the purpose of loading or discharging cargo; however, the Owner shall be responsible for charges for such berth when used solely for Vessel's purposes, such as awaiting Owner's orders, tank cleaning, repairs, etc. before, during or after loading or discharging.

13.    (a).    CARGOES EXCLUDED VAPOR PRESSURE. Cargo shall not be shipped which has a vapor pressure at one hundred degrees Fahrenheit (100 deg F.) in excess of thirteen and one-half pounds (13.5 lbs.) as determined by the current A.S.T.M. Method (Reid) D-323.

(b)    FLASH POINT. Cargo having a flash point under one hundred and fifteen degrees Fahrenheit (115 deg F.) (closed cup) A.S.T.M. Method D-56 shall not be loaded from lighters but this clause shall not restrict the Charterer from loading or topping off Crude Oil from vessels or barges inside or outside the bar at any port or place where bar conditions exist.

14.    (a).    ICE. In case port of loading or discharge should be inaccessible owing to ice, the Vessel shall direct her course according to Master's judgment, notifying by telegraph or radio, if available, the Charterers, shipper or consignee, who is bound to telegraph or radio orders for another port, which is free from ice and where there are facilities for the loading or reception of the cargo in bulk. The whole of the time occupied from the time the Vessel is diverted by reason of the ice until her arrival at an ice-free port of loading or discharge, as the case may be, shall be paid for by the Charterer at the demurrage rate stipulated in Part I.

(b)    If on account of ice the Master considers it dangerous to enter or remain at any loading or discharging place for fear of the Vessel being frozen in or damaged, the Master shall communicate by telegraph or radio, if available, with the Charterer, shipper or consignee of the cargo, who shall telegraph or radio him in reply, giving orders to proceed to another port as per Clause 14 (a) where there is no danger of ice and where there are the necessary facilities for the loading or reception of the cargo in bulk, or to remain at the original port at their risk, and in either case Charterer to pay for the time that the Vessel may be delayed, at the demurrage rate stipulated in Part I.

15.    TWO OR MORE PORTS COUNTING AS ONE. To the extent that the freight rate standard of reference specified in Part I F hereof provides for special groupings or combinations of ports or terminals, any two or more ports or terminals within each such grouping or combination shall count as one port for purposes of calculating freight and demurrage only, subject to the

following conditions:

(a)    Charterer shall pay freight at the highest rate payable under Part I F hereof for a voyage between the loading and discharge ports used by Charterer.

(b)    All charges normally incurred by reason of using more than one berth shall be for Charterer's account as provided in Clause 9 hereof.

(c)    Time consumed shifting between the ports or terminals within the particular grouping or combination shall not count as used laytime.

(d)    Time consumed shifting between berths within one of the ports or terminals of the particular grouping or combination shall count as used laytime.

16.    GENERAL CARGO. The Charterer shall not be permitted to ship any packaged goods or non-liquid bulk cargo of any description; the cargo the Vessel is to load under this Charter is to consist only of liquid bulk cargo as specified in Clause I.

17.    (a).    QUARANTINE. Should the Charterer send the Vessel to any port or place where a quarantine exists, any delay thereby caused to the Vessel shall count as used laytime; but should the quarantine not be declared until the Vessel is on passage to such port, the Charterer shall not be liable for any resulting delay.

(b)    FUMIGATION. If the Vessel, prior to or after entering upon this Charter, has docked or docks at any wharf which is not rat-free or stegomyia-free, she shall, before proceeding to a rat-free or stegomyia-free wharf, be fumigated by the Owner at his expense, except that if the Charterer ordered the Vessel to an infected wharf the Charterer shall bear the expense of fumigation.

18.    CLEANING. The Owner shall clean the tanks, pipes and pumps of the Vessel to the satisfaction of the Charterer's Inspector. The Vessel shall not be responsible for any admixture if more than one quality of oil is shipped, nor for leakage, contamination or deterioration in quality of the cargo unless the admixture, leakage, contamination or deterioration results from (a) unseaworthiness existing at the time of loading or at the inception of the voyage which was discoverable by the exercise of due diligence, or (b) error or fault of the servants of the Owner in the loading, care or discharge of the cargo.

19.    GENERAL EXCEPTIONS CLAUSE. The Vessel, her Master and Owner shall not, unless otherwise in this Charter expressly provided, be responsible for any loss or damage, or delay or failure in performing hereunder, arising or resulting from:- any act, neglect, default or barratry of the Master, pilots, mariners or other servants of the Owner in the navigation or management of the Vessel; fire, unless caused by the personal design or neglect of the Owner; collision, stranding or peril, danger or accident of the sea or other navigable waters; saving or attempting to save life or property; wastage in weight or bulk, or any other loss or damage arising from inherent defect, quality or vice of the cargo;  any act or omission of the Charterer or Owner, shipper or consignee of the cargo, their agents or representatives; insufficiency of packing; insufficiency or inadequacy or marks;  explosion, bursting of boilers, breakage of shafts, or any latent defect in hull, equipment or machinery; unseaworthiness of the Vessel unless caused by want of due diligence on the part of the Owner to make the Vessel seaworthy or to have her properly manned, equipped and supplied; or from any other cause of whatsoever kind arising without the actual fault of privity of the Owner. And neither the Vessel nor Master or owner, nor the Charterer, shall, unless otherwise in this Charter expressly provided, be responsible for any loss of damage or delay or failure in performing hereunder, arising or resulting from:- Act of God; act of war; perils of the seas; act of public enemies, pirates or assailing thieves; arrest or restraint of princes, rulers or people; or seizure under legal process provided bond is promptly furnished to release the Vessel or cargo; strike or lockout or stoppage or restraint of labor from whatever cause, either partial or general; or riot or civil commotion.

20.    ISSUANCE AND TERMS OF BILLS OF LADING.

(a)    The Master shall, upon request, sign Bills of Lading in the form appearing below for all cargo shipped but without prejudice to the rights of the Owner and Charterer under the terms of this Charter. The Master shall not be required to sign Bills of Lading for any port which, the Vessel cannot enter, remain at and leave in safety and always afloat nor for any blockaded port.

(b)    The carriage of cargo under this Charter Party and under all Bills of Lading issued for the cargo shall be subject to the statutory provisions and other terms set forth or specified in sub-paragraphs (i) through (vii) of this clause and such terms shall be incorporated verbatim or be deemed incorporated by the reference in any such Bill of Lading. In such sub-paragraphs and in any Act referred to therein, the word "carrier" shall include the Owner and the Chartered Owner of the Vessel.

(i)    CLAUSE PARAMOUNT. This Bill of Lading shall have effect subject to the provisions of the Carriage of Goods by Sea Acts of the United States, approved April 16, 1936, except that if this Bill of Lading is issued at a place where any other Act, ordinance or legislation gives statutory effect to the International Convention for the Unification of Certain Rules relating to Bills of Lading at Brussels, August 1924, then this Bill of Lading shall have effect, subject to the provisions of such Act, ordinance or legislation. The applicable Act, ordinance or legislation (hereinafter called the "Act") shall be deemed to be incorporated herein and nothing herein contained shall be deemed a surrender by the Owner of any of its rights or immunities or an increase of any of its responsibilities or liabilities under the Act. If any term of this Bill of Lading be repugnant to the Act to any extent, such term shall be void to the extent but no further.

(ii)    JASON CLAUSE. In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Owner is not responsible, by statute, contract or otherwise, the cargo shippers, consignees or owners of the cargo shall contribute with the Owner in General Average to the payment of any sacrifices, losses or expenses of a General Average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the cargo. If a salving ship is owned or operated by the Owner, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Owner or his agents may deem sufficient to cover the estimated contribution of the cargo and any salvage and special charges thereon shall, if required, be made by the cargo, shippers, consignees or owners of the cargo to the carrier before delivery.

(iii)    GENERAL AVERAGE. General Average shall be adjusted, stated and settled according to York/Antwerp Rules 1950 and, as matters not provided for by those rules, according to the laws and usages at the port of New York or at the port of London, whichever place is specified in Part I of this Charter. If a General Average statement is required, it shall be prepared at such port or place in the United States or United Kingdom, whichever country is specified in Part I of this Charter, as may be selected by the Owner, unless otherwise mutually agreed, by an Adjuster appointed by the Owner and approved by the Charterer. Such Adjuster shall attend to the settlement and the collection of the General Average, subject to customary charges. General Average Agreements and/or security shall be furnished by Owner and/or Charterer, and/or Owner and/or Consignee of cargo, if requested. Any cash deposit being made as security to pay General Average and/or salvage shall be remitted to the Average Adjuster and shall be held by him at his risk in a special account in a duly authorized and licensed bank at the place where the General Average statement is prepared.

(iv)    BOTH TO BLAME. If the Vessel comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Owner in the navigation or in the management of the Vessel, the owners of the cargo carried hereunder shall indemnify the Owner against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said cargo, paid or payable by the other or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or Owner. The foregoing provisions shall also apply where the owners, operators or those in charge of any ships or objects other than, or in addition to, the colliding ships or object are at fault in respect of a collision or contact.

(v)    LIMITATION OF LIABILITY. Any provision of this Charter to the contrary notwithstanding, the Owner shall have the benefit of all limitations of, and exemptions from, liability accorded to the owner or chartered owner of vessels by any statute or rule of law for the time being in force.

(vi)    WAR RISKS.    (a)    If any port of loading or of discharge named in this Charter Party or to which the Vessel may properly be ordered pursuant to the terms of the Bills of Lading be blockaded, or

(b)    If owing to any war, hostilities, warlike operations, civil war, civil commotions, revolutions or the operation of international law (a) entry to any such port of loading or of discharge or the loading or discharge of cargo at any such port be considered by the Master or Owners in his or their discretion dangerous or prohibited or (b) it be considered by the Master or Owners in his or their discretion dangerous or impossible for the Vessel to reach any such port of loading or discharge - the Charterers shall have the right to order the cargo or such part of it as may be affected to be loaded or discharged at any other safe port of loading or discharge within the range of loading or discharging ports respectively established under the provisions of the Charter Party (provided such other port is not blockaded or that entry thereto or loading or discharge of cargo thereat is not in the Master's or Owner's discretion dangerous or prohibited). If in respect of a port of discharge no orders be received from the Charterers within 48 hours after they or their agents have received from the Owners a request for the nomination of a substitute port, the Owners shall then be at liberty to discharge the cargo at any safe port which they or the Master may in their or his discretion decide on (whether within the range of discharging ports established under the provisions of the Charter Party or not) and such discharge shall be deemed to be due fulfillment of the contract or contracts of affreightment so far as cargo so discharged is concerned. In the event of the cargo being loaded or discharged at any such other port within the respective range of loading or discharging ports established under the provisions of the Charter Party, the Charter Party shall be read in respect of freight and all other conditions whatsoever as if the voyage performed were that originally designated. In the event, however, that the Vessel discharges the cargo at a port outside the range of discharging ports established under the provisions of the Charter Party, freight shall be paid as for the voyage originally designated and all extra expenses involved in reaching the actual port of discharge and or discharging the cargo thereat shall be paid by the Charterers or Cargo Owners. In the latter event the Owners shall have a lien on the cargo for all such extra expenses.

(c)    The Vessel shall have liberty to comply with any directions or recommendations as to departure, arrival, routes, ports of call, stoppages, destinations, zones, waters, delivery or in any otherwise whatsoever given by the government of the nations under whose flag the Vessel sails or any other government or local authority including any de facto government or local authority or by any person or body acting or purporting to act as or with the authority of any such government or authority or by any committee or person having under the terms of the war risks insurance on the vessel the right to give any such directions or recommendations. If by reason of or in compliance with any such directions or recommendations, anything is done or is not done such shall not be deemed a deviation.

If by reason of or in compliance with any such direction or recommendation the Vessel does not proceed to the port or ports of discharge originally designated or to which she may have been ordered pursuant to the terms of the Bills of Lading, the Vessel may proceed to any safe port of discharge which the Master or Owners in his or their discretion may decide on and there discharge the cargo. Such discharge shall be deemed to be due fulfillment of the contract or contracts of affreightment and the Owners shall be entitled to freight as if discharge has been effected at the port or ports originally designated or to which the vessel may have been ordered pursuant to the terms of the Bills of Lading. All extra expenses involved in reaching and discharging the cargo at any such other port of discharge shall be paid by the Charterers and/or Cargo Owners and the Owners shall have a lien on the cargo for freight and all such expenses.

(vii)    DEVIATION CLAUSE. The Vessel shall have liberty to call at any ports in any order, to sail with or without pilots, to tow or to be towed, to go to the assistance of vessels in distress, to deviate for the purpose of saving life or property or of landing any ill or injured person on board, and to call for fuel at any port or ports in or out of the regular course of the voyage. Any salvage shall be for the sole benefit of the Owner.

21.    LIEN. The Owner shall have an absolute lien on the cargo for all freight, deadfreight, demurrage and costs, including attorney fees, of recovering the same, which lien shall continue after delivery of the cargo into the possession of the Charterer, or of the holders of any Bills of Lading covering the same or of any storageman.

22.    AGENTS. The Owner shall appoint Vessel's agents at all ports.

23.    BREACH. Damages for breach of this Charter shall include all provable damages, and all costs of suit and attorney fees incurred in any action hereunder.

24.    ARBITRATION. Any and all differences and disputes of whatsoever nature arising out of this Charter shall be put to arbitration in the City of New York or in the City of London whichever place is specified in Part I of this charter pursuant to the laws relating to arbitration there in force, before a board of three persons, consisting of one arbitrator to be appointed by the Owner, one by the Charterer, and one by the two so chosen. The decision of any two of the three on any point or points shall be final. Either party hereto may call for such arbitration by service upon any officer of the other, wherever he may be found, of a written notice specifying the name and address of the arbitrator chosen by the first moving party and a brief description of the disputes or differences which such party desires to put to arbitration. If the other party shall not, by notice served upon an officer of the first moving party within twenty days of the service of such first notice, appoint its arbitrator to arbitrate the dispute or differences specified, then the first moving party shall have the right without further notice to appoint a second arbitrator, who shall be a disinterested person with precisely the same force and effect as if said second arbitrator has been appointed by the other party. In the event that the two arbitrators fail to appoint a third arbitrator within twenty days of the appointment of the second arbitrator, either arbitrator may apply to a Judge of any court of maritime jurisdiction in the city abovementioned for the appointment of a third arbitrator, and the appointment of such arbitrator by such Judge on such application shall have precisely the same force and effect as if such arbitrator had been appointed by the two arbitrators. Until such time as the arbitrators finally close the hearings either party shall have the right by written notice served on the arbitrators and on an officer of the other party to specify further disputes or differences under this Charter for hearing and determination. Awards made in pursuance to this clause may include costs, including a reasonable allowance for attorney's fees, and judgement may be entered upon any award made hereunder in any Court having jurisdiction in the premises.

25.    SUBLET. Charterer shall have the right to sublet the Vessel. However, Charterer shall always remain responsible for the fulfillment of this Charter in all its terms and conditions.

26.    OIL POLLUTION CLAUSE. Owner agrees to participate in Charterer's program covering oil pollution avoidance. Such program prohibits discharge overboard of all oily water, oily ballast or oil in any form of a persistent nature, except under extreme circumstances whereby the safety of the vessel, cargo or life at sea would be imperiled.

Upon notice being given to the Owner that Oil Pollution Avoidance controls are required, the Owner will instruct the Master to retain on board the vessel all oily residues from consolidated tank washings, dirty ballast, etc., in one compartment, after separation of all possible water has taken place. All water separated to be discharged overboard.

If the Charterer requires that demulsifiers shall be used for the separation of oil/water, such demulsifiers shall be obtained by the Owner and paid for by Charterer.

The oil residues will be pumped ashore at the loading or discharging terminal, either as segregated oil, dirty ballast or co-mingled with cargo as it is possible for Charterers to arrange. If it is necessary to retain the residue on board co-mingled with or segregated from the cargo to be loaded, Charterers shall pay for any deadfreight so incurred.

The Charterer agrees to pay freight as per the terms of the Charter Party on any consolidated tank washings, dirty ballast, etc., retained on board under Charterer's instructions during the loaded portion of the voyage up to a maximum of 1% of the total deadweight of the vessel that could be legally carried for such voyage. Any extra expenses incurred by the vessel at loading or discharging port in pumping ashore oil residues shall be for Charterer's account, and extra time, if any, consumed for this operation shall count as used laytime.

# BILL OF LADING

Shipped in apparent good order and condition by

on board the                                                                                          Steamship/Motorship

whereof                                                                                                 is Master, at the port of

to be delivered at the port of

or so near thereto as the Vessel can safely get, always afloat, unto

or order on payment of freight at the rate of

This shipment is carried under and pursuant to the terms of the contract/charter dated New York/London

between                                                                      and                                                                      , as Charterer, and
all the terms whatsoever of the said contract/charter except the rate and payment of freight specified therein apply to and govern the rights of the parties concerned in this shipment.

In witness whereof the Master has signed                                                                                                        Bills of Lading
of this tenor and date, one of which being accomplished, the others will be void.

Dated at                                                                                           this                                    day of

                                                                                                                                                                            Master

This Charter Party is a computer generated copy of the ASBATANKVOY form, printed under licence from the Association of Ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by striking out of original characters, or the insertion of new characters, such characters clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or end user as appropriate and not by the author.

Pleiades Amendments in Green

-------------------------------------------------------------------

ALL OTHER TERMS AND CONDS SUBJECT TO BE REVIEWED MUTUALLY/AMENDED
LOGICALLY BASIS LATEST ATTACHED/

LAST DONE BETWEEN MT SEA HAZEL / TOYOTA TSUSHO CORPORATION CP 22ND MAY
2020 ASF;

-NOTICE OF READINESS (NOR) / ETA / LOPs TO BE SUBMITTED EITHER BY E-
MAIL, OR FAX OR TELEX AND ANY REFERENCE TO TELEX TO BE DEEMED AS
REFERENCE TO E-MAIL.

MAXIMUM 7 DAYS WAITING FOR ORDERS, NO STORAGE OPTIONS AND NO
BACKLOADING. TIME WAITING FOR ORDERS, UP TO 7 DAYS, TO BE PAID AT
DEMMURRAGE RATE, THEREAFTER AS PER BELOW STORAGE CLAUSE –

PLS DELETE AND KINDLY REFER TO OUR STORAGE CLAUSE, WHICH IS DESIGNED
FOR SUCH OCCASIONS:

IN THE EVENT THAT CHARTERERS WISH TO USE THE VESSEL AS A STORAGE THE
BELOW STORAGE CLAUSE TO APPLY
STORAGE CLAUSE

1. CHARTERER SHALL HAVE THE OPTION OF REQUIRING THE VESSEL TO WAIT EN
ROUTE AT ONE OR MORE PLACES AND/OR DISCHARGE AREAS AS FLOATING STORAGE
AT A SAFE ANCHORAGE.
   THE PERIOD OF STORAGE SHALL BE FOR UP TO __30 DAYS WITH CHARTERER'S
OPTION TO TERMINATE STORAGE ON GIVING OWNER __7__ DAYS NOTICE.
2. IN THE EVENT CHARTERER EXERCISES THE OPTION TO UTILIZE VESSEL AS
STORAGE AT A PLACE EN ROUTE, CHARTERER NEED ONLY GIVE MINIMAL NOTICE.
IF CHARTERER WISH
   TO UTILIZE VESSEL FOR STORAGE AT THE DISCHARGE AREA, THEN CHARTERER
SHALL, IN THIS CASE, GIVE MINIMUM ___7___ DAYS NOTICE.
3. HIRE FOR STORAGE SHALL BE PAID FOR AT US DOLLARS __18,000__ PER DAY,
OR PRO-RATA, AND PAYMENTS SHALL BE MADE AT COMPLETION OF EACH FIFTEEN
(15) DAY PERIOD AFTER ARRIVAL AT STORAGE AREA.
4. IF VESSEL IS REQUIRED TO WAIT ON ROUTE, 50% OF THE OCEAN FREIGHT
SHALL BE PAYABLE TO OWNER NOT LATER THAN DATE WHICH WOULD BE EQUIVALENT
TO
   THAT OF FOUR DAYS AFTER VESSEL'S THEORETICAL ARRIVAL DATE AT
DISCHARGE POINT. IF THE VESSEL IS SUBSEQUENTLY REQUIRED TO FLOAT AT THE
DISCHARGE AREA, THE BALANCE OF FREIGHT UP TO 80%
   SHALL BE PAYABLE UPON ARRIVAL AT STORAGE AREA. THE REMAINDER OF
FREIGHT IS DUE UPON DISCHARGE.
5. HOTEL BUNKERS SHALL BE FOR CHARTRERERS' ACCOUNT
6. PLUS ALL BUNKERS CONSUMED IF VESSEL IS REQUIRED TO STEAM AS BELOW:
A. AS REQUESTED BY CHARTERER
B. AT MASTER'S DISCRETION SHOULD THE VESSEL BE UNABLE TO ANCHOR OR
REMAIN AT ANCHOR AT THE DESIGNATED LOCATION DUE TO WEATHER CONDITIONS,
BOTTOM CONDITIONS OR ANY OTHER FACTOR WHICH, IN THE MASTER'S JUDGEMENT
REPRESENTS AN UNSAFE SITUATION.

~~C. NO ADDITIONAL PAYMENT REQUIRED FOR STEAMING TO THE INITIAL DISCHARGE PORTS OR BERTHS AS PROVIDED IN CHARTER PARTY DATED _____ PROVIDED THE CHARTERER IS RESPONSIBLE FOR ANY AND ALL DEVIATION INCURRED.~~
~~D. OWNER WARRANTS THAT VESSEL'S ANCHOR AND ANCHOR CHAINS ARE IN GOOD OPERATIONAL CONDITION AND WILL BE MAINTAINED THROUGHOUT CHARTER PARTY.~~
~~7. PLUS COST OF BUNKERS CONSUMED AGAINST MASTER'S STATEMENT AND AVAILABLE SUPPORTING DOCUMENTS IF VESSEL IS REQUIRED BY CHARTERER TO CIRCULATE THE CARGO WITHIN THE VESSEL'S CARGO AS PROVIDED FOR UNDER _____ CHARTER PARTY DATED ___. SHOULD THE VESSEL BE REQUIRED TO RELOAD AND PUMP ONE OR MORE TIMES DURING THE STORAGE PERIOD, THE SAME RATE TO APPLY FOR ALL SUCH DISCHARGE WHETHER THE VESSEL IS PUMPING _____ ALONGSIDE THE DOCK OR BY SHIP-TO-SHIP TRANSFER.~~
~~8. SHOULD THE PORT AUTHORITIES REQUIRE THE VESSEL TO MAINTAIN THE ENGINE ON STANDBY WITH THE STEAM ON THE BOILERS AT THE STORAGE AREAS, THE CHARTERER AGREES TO PAY OWNER ONE HALF THE RATE IN ITEM 6.~~
~~ALL OTHER TERMS, CONDITIONS AND EXCEPTIONS TO THE CHARTER PARTY ARE TO REMAIN UNALTERED AND IN FULL FORCE AND EFFECT~~

~~_____ ANY PORT COSTS FOR THE TIME OF THE VESSEL USED AS STORAGE TO BE FOR CHARTERERS ACCOUNT.~~
~~IF THE VESSEL STAYS IN PORT FOR MORE THAN 20 DAYS, AS DIRECTED BY THE CHARTERERS AND WHEN BOTTOM FOULING IS EXPERIENCED, CHARTERERS ARE TO POSITION THE VESSEL TO A SAFE ANCHORAGE~~
~~HERE OWNERS CAN CARRY OUT BOTTOM CLEANING AT CHARTERERS TIME AND EXPENSE. PLACE WHERE TO CARRY BOTTOM CLEANING TO BE MUTUALLY AGREED.~~
~~ANY SHIFTING EXPENSES, INCLUDING BUNKERS CONSUMED DURING SHIFTING TO BE FOR CHARTERERS ACCOUNT~~

**EUROTANKERS STORAGE / DRIFTING CLAUSE**
**=============================================**

**1.CHARTERERS OPTION TO PERFORM STORAGE AT A SAFE LOCATION WITHIN DISCHARGE RANGE (OR INSTRUCT VESSEL TO DRIFT/ANCHOR AT A SAFE LOCATION AT SEA ON LADEN PASSAGE EN ROUTE TO DISCHARGE PORT AND/OR AWAIT ORDERS, ALWAYS SUBJECT TO MASTER'S APPROVAL, AND IN SUCH CASE STORAGE CLAUSE TO APPLY AFTER A TOTAL OF 7 DAYS GRACE PERIOD (WITHIN GRACE PERIOD TIME TO COUNT IN FULL, REGARDLESS OF WEATHER/SEA CONDITIONS) AND/OR IF VESSEL WAITS AT DISCHARGE PORT(S)/PLACE(S)/CUSTOMARY ANCHORAGE(S) FOR MORE THAN 7 DAYS THEN STORAGE OPTION IS DEEMED DECLARED AND THE FOLLOWING SHALL APPLY:**

**2.STORAGE RATE: DEMURRAGE RATE**

**3.PERIOD: UP TO MAXIMUM [15 ~~20~~] DAYS STORAGE**

**4. ANY BUNKERS CONSUMED WHILST DRIFTING/STORING SHALL BE FOR CHARTERERS' ACCOUNT AT LAST PURCHASED PRICE AND TO BE PAID TOGETHER WITH FREIGHT. OWNERS SHALL PROVIDE FULL DOCUMENTATION TO SUPPORT ANY CLAIM IN CASE IT ARISES UNDER THIS CLAUSE.**

**5.STORAGE HIRE TO BE PAID EVERY 05 DAYS IN ADVANCE AND BUNKERS CONSUMED AGAIN TO BE PAID EVERY 05 DAYS IN ARREARS.**

**6.ALL/ANY PORT COST(S) INCLUDING BUT NOT LIMITED TO AGENCY FEES, LICENSE/PERMITS ETC, IF ANY, AT STORAGE LOCATION(S) TO BE FOR CHARTERER'S ACCOUNT.**

7.ANY INCREMENTAL COST IN THE DAILY OPERATING EXPENSE OF THE VESSEL AS A RESULT OF THE VESSEL BEING EMPLOYED FOR STORAGE, INCLUDING BUT NOT LIMITED TO BUNKERING, PROVISIONS, CREW CHANGE, PIRACY MEASURES (IF ANY), ETC, FOR CHARTERERS ACCOUNT.

8.ANY DEVIATION INCURRED IN CALLING THE STORAGE LOCATION WHICH IS OVER AND ABOVE THE DIRECT PASSAGE FROM THE LOADPORT(S) TO THE DISCHARGE PORT(S) TO BE FOR CHARTERER'S ACCOUNT. I.E. ALL STEAMING BUNKERS AND TIME AT DEMURRAGE RATE. BUNKER COST AS PER LAST INVOICE PRICE. THIS PAYMENT TO BE SETTLED TOGETHER WITH FREIGHT.

9.CHARTERERS TO PROVIDE 10/7 DAYS APPROXIMATE FOLLOWED BY 5/4/3/2/1 DAY(S) FIRM NOTICES OF COMPLETION OF STORAGE.

10.UPON COMPLETION OF STORAGE IF THE HULL AND/OR PROPELLER ARE FOUND TO BE FOULED, CHARTERERS TO CARRY OUT A COMPLETE UNDERWATER HULL CLEANING, INCLUDING PROPELLER POLISHING AT THEIR TIME AND COST TO OWNERS SATISFACTION PRIOR FINAL DISCHARGE.

11.COMMISSIONS APPLICABLE ON STORAGE HIRE ONLY (EARNED & RECEIVED BY OWNERS).

12.OWNERS WILL NOT BE HELD RESPONSIBLE FOR LOSS IN VALIDITY OF SIRE/OIL MAJOR APPROVALS AS A RESULT OF THE VESSEL BEING EMPLOYED FOR STORAGE.

13.OWNERS HAVE THE OPTION TO STEAM THE VESSEL TO MINIMIZE HULL FOULING. (TIME FOR EACH STEAMING IN EVERY 10 DAYS PERIOD SHALL BE ABOUT EIGHT (8) HOURS - MAXIMUM 10 HOURS). ALL EXPENSES INCURRED INCLUDING TIME AND BUNKER COSTS TO BE FOR CHARTERER'S ACCOUNT.
WITH CHARTERERS PRIOR CONSENT, WHICH MAY NOT BE UNREASONABLY WITHHELD, OWNERS SHALL PROVIDE THEIR REQUIREMENT IN WRITING AT LEAST 3 DAYS BEFORE THE ACTUAL STEAMING DATE.

14.TIME FROM VESSEL'S ARRIVAL AT DRIFTING/STORING LOCATION (NOT WITHSTANDING ITEM NUMBER 1, ABOVE), TO THE TIME VESSEL DEPARTS, ON RECEIPT OF CHARTERER'S INSTRUCTIONS, FROM SUCH LOCATION SHALL BE COUNTED AS USED LAYTIME OR DEMURRAGE, IF ON DEMURRAGE, WITHOUT DEDUCTION.

IN CASE CHARTERERS DO NOT WISH TO UTILIZE ITEM 13 THEN WE PROPOSE THEM TO USE OUR BELOW CLS:

EUROTANKERS PROLONGED STAY CLAUSE
=================================
(A) IF, IN ACCORDANCE WITH CHRTRS' ORDERS, THE VSL REMAINS AT OR SHIFTS WITHIN A PLACE, ANCHORAGE &/OR BERTH FOR AN AGGREGATE PERIOD EXCEEDING 05 DAYS IN TROPICAL WATER OR 10 DAYS IN OTHER AREAS THAN TROPICAL:

(I) UNLESS CHRTRS CAN PROVIDE EVIDENCE THAT THE VSL'S PERFORMANCE
    HAS NOT BEEN AFFECTED, ANY APPLICABLE PERFORMANCE WARRANTIES
    SHALL BE SUSPENDED PENDING INSPECTION OF THE VSL'S UNDERWATER
    PARTS INCLUDING, BUT NOT LIMITED TO, THE HULL, SEA CHESTS,
    RUDDER & PROPELLER.

(B)  EITHER PARTY MAY CALL FOR INSPECTION IN ACCORDANCE WITH SUB-CLAUSE (A)
WHICH SHALL BE ARRANGED JOINTLY BY OWNERS & CHRTRS & UNDERTAKEN AT CHRTRS'
RISK, COST, EXPENSE & TIME. THE INSPECTION & IF NECESSARY THE CLEANING TO
BE CARRIED OUT AS SOON AS POSSIBLE AT 1ST AVAILABLE/REASONABLE OPPORTUNITY
FOLLOWING A PROLONGED PORT STAY.

(C) IF, AS A RESULT OF THE INSPECTION, CLEANING OF ALL OR ANY OF THE
UNDERWATER PARTS IS DEEMED TO BE NECESSARY, SUCH CLEANING SHALL BE
UNDERTAKEN BY THE CHRTRS AT THEIR RISK, COST, EXPENSE & TIME IN
CONSULTATION WITH THE OWNERS.

(I)  CLEANING SHALL ALWAYS BE UNDER THE SUPERVISION OF THE MASTER &,
     IN RESPECT OF THE UNDERWATER HULL COATING, IN ACCORDANCE WITH THE PAINT
     MANUFACTURERS' RECOMMENDED GUIDELINES ON CLEANING, IF ANY. SUCH CLEANING
     SHALL BE CARRIED OUT WITHOUT DAMAGE TO THE VESSEL'S UNDERWATER
PARTS OR COATING.
     IF, AT THE PORT OR PLACE OF INSPECTION, FULL CLEANING IS NOT
PERMITTED, PERFORMANCE
     WARRANTIES SHALL REMAIN SUSPENDED UNTIL FULL CLEANING IS COMPLETED.

(D)  CLEANING IN ACCORDANCE WITH THIS CLAUSE SHALL ALWAYS BE CARRIED OUT
PRIOR TO REDELIVERY.

- BIMCO DESIGNATED ENTITIES CLAUSE FOR CHARTER PARTIES
(A)  THE  PROVISIONS  OF  THIS  CLAUSE  SHALL  APPLY  IN  RELATION  TO  ANY
SANCTION, PROHIBITION OR RESTRICTION IMPOSED ON ANY SPECIFIED PERSONS, ENTITIES
OR  BODIES  INCLUDING  THE  DESIGNATION  OF  SPECIFIED  VESSELS  OR  FLEETS  UNDER
UNITED  NATIONS  RESOLUTIONS  OR  TRADE  OR  ECONOMIC  SANCTIONS,  LAWS  OR
REGULATIONS OF THE EUROPEAN UNION OR THE UNITED STATES OF AMERICA.

(B)  OWNERS AND CHARTERERS RESPECTIVELY WARRANT FOR THEMSELVES (AND IN
THE CASE OF ANY SUBLET, CHARTERERS FURTHER WARRANT IN RESPECT OF ANY
SUB-CHARTERERS,  SHIPPERS,  RECEIVERS,  OR  CARGO  INTERESTS)  THAT  AT  THE  DATE
OF THIS FIXTURE AND THROUGHOUT THE DURATION OF THIS CHARTER PARTY THEY
ARE  NOT  SUBJECT  TO  ANY  OF  THE  SANCTIONS,  PROHIBITIONS,  RESTRICTIONS  OR
DESIGNATION REFERRED TO IN SUB-CLAUSE (A) WHICH PROHIBIT OR RENDER
UNLAWFUL ANY PERFORMANCE UNDER THIS CHARTER PARTY OR ANY SUBLET OR ANY
BILLS OF LADING. OWNERS FURTHER WARRANT THAT THE NOMINATED VESSEL, OR ANY
SUBSTITUTE, IS NOT A DESIGNATED VESSEL.

(C)  IF AT ANY TIME DURING THE PERFORMANCE OF THIS CHARTER PARTY EITHER
PARTY BECOMES AWARE THAT THE OTHER PARTY IS IN BREACH OF WARRANTY AS
AFORESAID,  THE  PARTY  NOT  IN  BREACH  SHALL  COMPLY  WITH  THE  LAWS  AND
REGULATIONS OF ANY GOVERNMENT TO WHICH THAT PARTY OR THE VESSEL IS

SUBJECT, AND FOLLOW ANY ORDERS OR DIRECTIONS WHICH MAY BE GIVEN BY
ANYBODY ACTING WITH POWERS TO COMPEL COMPLIANCE, INCLUDING WHERE
APPLICABLE THE
OWNERS' FLAG STATE. IN THE ABSENCE OF ANY SUCH ORDERS, DIRECTIONS, LAWS
OR REGULATIONS, THE PARTY NOT IN BREACH MAY, IN ITS OPTION, TERMINATE
THE CHARTER PARTY FORTHWITH OR, IF CARGO IS ON BOARD, DIRECT THE VESSEL
TO ANY SAFE PORT OF THAT PARTY'S CHOICE AND THERE DISCHARGE THE CARGO
OR PART THEREOF.

(D) IF, IN COMPLIANCE WITH THE PROVISIONS OF THIS CLAUSE, ANYTHING IS
DONE OR IS NOT DONE, SUCH SHALL NOT BE DEEMED A DEVIATION BUT SHALL
BE CONSIDERED DUE FULFILMENT OF THIS CHARTER PARTY.

(E) NOTWITHSTANDING ANYTHING IN THIS CLAUSE TO THE CONTRARY, OWNERS OR
CHARTERERS SHALL NOT BE REQUIRED TO DO ANYTHING WHICH CONSTITUTES A
VIOLATION OF THE LAWS AND REGULATIONS OF ANY STATE TO WHICH EITHER OF
THEM IS SUBJECT.

(F) OWNERS OR CHARTERERS SHALL BE LIABLE TO INDEMNIFY THE OTHER PARTY
AGAINST ANY AND ALL CLAIMS, LOSSES, DAMAGE, COSTS AND FINES WHATSOEVER
SUFFERED BY THE OTHER PARTY RESULTING FROM ANY BREACH OF WARRANTY AS
AFORESAID.

(G) CHARTERERS SHALL PROCURE THAT THIS CLAUSE IS INCORPORATED INTO ALL
SUB-CHARTERS, CONTRACTS OF CARRIAGE AND BILLS OF LADING ISSUED PURSUANT
TO THIS CHARTER PARTY.

- NAVIG8 VOYAGE CHARTER SANCTIONS CLAUSE
=======================================
CHARTERERS WARRANT THAT THE CARGO WILL NOT BE OWNED AND/OR ORIGINATE
FROM AND/OR BE A BLEND OF ANY/BY A SANCTIONED
ENTITY AND/OR COUNTRY AND/OR PERSON AND THAT THE PARTY WHO WILL BE
NAMED AS THE SHIPPER OR RECEIVER ON THE B/L IS NOT A US/EU BLACKLISTED
ENTITY OR UNDER SECONDARY US SANCTIONS. FURTHERMORE NEITHER OWNERS NOR
HEAD OWNERS SHALL BE OBLIGED TO COMPLY WITH ANY ORDERS WHICH WILL
EXPOSE EITHER OF THEM TO ANY SANCTION OR PROHIBITION IMPOSED BY ANY
STATE, SUPRANATIONAL OR INTERNATIONAL GOVERNMENTAL ORGANISATION. IF ANY
ORDERS ARE GIVEN IN BREACH OF THIS CLAUSE THEN, EVEN IF THE VOYAGE HAS
ALREADY COMMENCED, OWNERS AND HEAD OWNERS SHALL HAVE THE RIGHT TO
REFUSE TO PROCEED WITH THE EMPLOYMENT AND CHARTERERS SHALL BE OBLIGED
TO ISSUE ALTERNATIVE VOYAGE ORDERS WITHIN 48 HOURS OFRECEIPT OF OWNERS'
NOTIFICATION OF REFUSAL TO PROCEED. IF CHARTERERS DO NOT ISSUE SUCH
ALTERNATIVE VOYAGE ORDERS OWNERS AND HEAD OWNERS MAY DISCHARGE ANY
CARGO ALREADY LOADED AT ANY SAFE PORT (INCLUDING THE PORT OF LOADING).

CHARTERERS AGREE TO INDEMNIFY OWNERS AND HEAD OWNERS FOR ANY COSTS,
DAMAGES OR LOSSES WHATSOEVER OR HOWSOEVER CAUSED WHICH OWNERS OR HEAD
OWNERS SUFFERED AS A RESULT OF ANY BREACH OF THIS CLAUSE (INCLUDING IN
THE EVENT THAT SUCH CONSTITUTES A BREACH OF THEIR OWN OBLIGATIONS
WHETHER UNDER THE CHARTERPARTY OR B/L).

- EUROTANKERS INTERIM PORT CLAUSE DELETE, REPLACE WITH TORM INTERIM
PORT CLAUSE
=============================
CHARTERERS TO PAY FOR ADDITIONAL INTERIM LOAD/DISCH PORT/LIGHTERAGE
LOCATION AT COST WITH ADDITIONAL STEAMING TIME TO BE INCURRED FOR

~~SUCH DEVIATION WHICH EXCEEDS DIRECT PASSAGE FROM FIRST LOADPORT TO FINAL DISCHPORT/LIGHTERAGE LOCATION.~~

~~TIME TO COUNT FROM ARRIVAL PILOT STATION, OR LIGHTERAGE LOCATION, FOR THE INTERIM LOAD/DISCHARGE PORT UNTIL DROPPING LAST OUTWARD PILOT, OR SAILING FROM THE LIGHTERAGE LOCATION AS PER CP SPEED, FOR THE INTERIM LOAD/DISCH PORT I.E. NO ALLOWANCE FOR NOTICE TIME, NOR DEDUCTION FOR SHIFTING EVEN FROM ANCHORAGE TO FIRST BERTH AND NO DEDUCTION FOR TIME LOST DUE TO TIDE, SEA AND WEATHER CONDITIONS. TIME SAVED FROM LAYTIME UNUSED AT 1ST LOAD AND LAST DISPORT TO BE CREDITED TO CHARTERERS ACCOUNT AND TO BE DEDUCTED FROM TIME USED FOR DEVIATION AND TIME USED IN PORT AT INTERIM PORT(S). ANY TIME USED IN EXCESS OF AFORE MENTIONED TO BE CALCULATED AT DEMURRAGE RATE PER DAY PRO RATA.~~

~~TIME CONSUMED FOR DEVIATION ALONG WITH BUNKERS CONSUMED, AND TIME CONSUMED IN-PORT AT INTERIM PORT, TO BE PAID TOGETHER WITH FREIGHT IMMEDIATELY UPON COMPLETION OF DISCHARGE AS PER OWNERS TELEXED/E-MAILED INVOICE WITH AVAILABLE SUPPORTING DOCUMENT, WHICH LATER TO BE SUPPORTED BY HARD COPY DOCUMENTATION.~~

~~- PORT COSTS AT INTERIM PORTS TO BE FOR CHARTERERS ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM. THE COST OF BUNKERS TO BE BASED ON LAST PURCHASED PRICE PAID. ALL BUNKERS CONSUMED BY REASON OF CALLING AT AN INTERIM PORT(S) IN EXCESS OF THOSE REQUIRED FOR A NORMAL FULL LOADING OR DISCHARGING OPERATION WILL BE FOR CHARTERERS ACCOUNT.~~

**- EUROTANKERS ISPS CLAUSE, AS ATTACHED**

- ANY EXTRA HEATING REQUIRED ABOVE LOADING TEMP TO BE FOR CHRTRS ACCT AND SETTLED TOGETHER WITH FREIGHT AGAINST SUPPORTING DOCUMENTS

- DEMMURAGE CLAIM IF ANY TO BE PAID BY CHRTRS LATEST 60 DAYS ~~UPON MUTUAL AGREEMENT~~ AFTER COMPLETION OF DISCHARGING

- BP IN-TRANSIT LOSS CLAUSE - **PLS DELETE AND REPLACE WITH OUR BELOW:**
~~- IN ADDITION TO ANY OTHER RIGHTS WHICH CHARTERERS MAY HAVE, OWNERS WILL BE RESPONSIBLE~~
~~- FOR THE FULL AMOUNT OF ANY IN-TRANSIT LOSS IF IN-TRANSIT LOSS EXCEEDS 0.3%~~ **0.5%** ~~BY VOLUME AND~~
~~- CHARTERERS SHALL HAVE THE RIGHT TO DEDUCT FROM FREIGHT~~ **CLAIM** ~~AN AMOUNT EQUAL TO THE FOB~~
~~- LOADING PORT VALUE OF SUCH CARGO PLUS FREIGHT AND INSURANCE DUE WITH RESPECT THERETO. INTRANSIT~~
~~- LOSS IS DEFINED AS THE DIFFERENCE BETWEEN NET VESSEL STANDARD VOLUMES AFTER LOADING AT THE LOADING~~
~~- PORT AND BEFORE UNLOADING AT THE DISCHARGE PORT. VOLUME OF CARGO TO BE ASCERTAINED AT LOADING PORT~~
~~- AND DISCHARGE PORT BY INDEPENDENT INSPECTORS APPOINTED BY~~ **JOINTLY OWNERS &** ~~CHARTERERS WHOSE FINDINGS~~
~~- ARE TO BE FINAL AND BINDING ON BOTH PARTIES SAVE FOR INSTANCES OF ARITHMETICAL ERROR IN CALCULATION.~~

**- EUROTANKERS IN-TRANSIT LOSS CLAUSE**
**=================================**
**IN ADDITION TO ANY OTHER RIGHTS WHICH CHARTERERS MAY HAVE, OWNERS WILL BE RESPONSIBLE FOR THE FULL AMOUNT OF ANY IN-TRANSIT LOSS IF**

IN-TRANSIT LOSS EXCEEDS 0.5% BY VOLUME AND CHARTERERS SHALL HAVE
THE RIGHT TO CLAIM FROM OWNERS AN AMOUNT EQUAL TO THE FOB LOADING
PORT VALUE OF SUCH CARGO PLUS FREIGHT AND INSURANCE DUE WITH RESPECT
THERETO. IN-TRANSIT LOSS IS DEFINED AS THE DIFFERENCE BETWEEN TOTAL
CALCULATED (TCV) VOLUMES AFTER LOADING AT THE LOADING PORT AND BEFORE
UNLOADING AT THE DISCHARGE PORT. VOLUME OF CARGO TO BE ASCERTAINED AT
LOADING PORT AND DISCHARGE PORT BY TWO INDEPENDENT INSPECTORS, ONE
APPOINTED BY CHARTERERS AND ONE APPOINTED BY THE OWNERS, AND EACH
PARTY BEARING THEIR OWN COST. OWNERS HAVE THE OPTION TO BE REPRESENTED
BY THE MASTER/VESSEL'S DOCS.

- WSTC

- CHARTERERS AGENTS BOTH ENDS PROVIDED COMPETITIVE,
EXCEPT FOR SINGAPORE WHERE OWNERS TO APPOINT THEIR AGENT.
CHARTS INTENTION TO NOMINATE BLU SHIPPING PTE LTD

- CROSS HARBOUR LICENCE TO BE FOR CHARTERERS' ACCOUNT

- ANY TAXES AND/OR DUES ON FREIGHT AND/OR CARGO FOR CHARTERERS ACCOUNT
AND TO BE SETTLED DIRECTLY - PLS DELETE AND REPLACE WITH OUR BELOW:

- EUROTANKERS TAXATION CLAUSE
==============================
ANY TAXES, LEVIES, IMPOSTS, ASSESSMENTS, DUES, OTHER CHARGES AND/OR
WITHHOLDING ON CARGO AND/OR FREIGHT (INCLUDING ANY SERVICE
TAX, ENTERPRIZE INCOME TAX IN CHINA, IF APPLICABLE, OR ANY RELATED
PENALTY OR INTEREST) IF NOT COVERED BY WORLDSCALE, TO BE FOR
CHARTERER'S ACCOUNT AND SETTLED DIRECTLY BY THEM.

- FOR STS/FSU/OFFSHORE LOADING AND/OR DISCHARGING, ALL PORT
DISBURSEMENTS, MOORING EQUIPMENT AND AGENCY FEES FOR CHARTERERS ACCOUNT
AND TO BE SETTLED DIRECTLY BY THEM. STS EQUIPMENT TO BE SUPPLIED BY
CHARTERERS.

- OWNERS RIVER PORT CLAUSE TO APPLY FOR THE PORT OF JINGJIANG - BELOW
CLAUSE TO APPLY:

- VSL NO TO TRADE IN ANY SORT OF ICE NOR FOLLOW ICEBREAKERS

- OETKER UPRIVER CLAUSE
-----------------------
TIME AND EXPENSES USED FOR RIVER NAVIGATION TO BE FOR OWNER'S ACCOUNT,
HOWEVER, ON LADEN VOYAGE WHEN PROCEEDING TO DISCHARGE
PORT ALL WAITING TIME FOR PILOT, DAYLIGHT OR TIDE CONSUMED IN EXCESS OF
6 HOURS COUNTING FROM VESSEL'S ARRIVAL AT CHANG JIAN KOU
TO BE FOR CHARTERER'S ACCOUNT AND TO COUNT AS USED LAYTIME OR DEMURRAGE
IF VESSEL IS ON DEMURRAGE. VESSEL TO TENDER NOR UPON
ARRIVAL CHANG JIAN KOU PILOT STATION.

- AGENTS: OWNERS AGENT LOADPORT (CORY BROTHER) / CHRTS AGENTS DISPORT
N/A FOR THIS VOYAGE

- IF VESSEL TO CALL KOREAN PORTS, KOREAN ANCHORAGE CLAUSE TO APPLY
KOREAN ANCHORAGE CLAUSE IN CASE VESSEL ARRIVED AT QUARANTINE

STATION AT KOREAN PORTS AND TENDER NOTICE OF READINESS TO
LOAD/DISCHARGE BETWEEN 16:00 AND 24:00 HOURS, LAYTIME SHALL COUNT
FROM 06:00 HOURS THE NEXT DAY. IN REGARDS TO SOUTH KOREAN (NOT
APPLICABLE)

- RIVER PORT CLAUSE:
IF LOAD OR DISCHARGE AT SHANGHAI IN COMBINATION WITH OTHER RIVERPORTS),
VSL TO TENDER NOR UPON ARRIVAL PILOT STATION CHANGJIANG KOU
AND TIME TO COUNT 6 HRS THEREAFTER UNTIL HOSE DISCONNECTION AT
SHANGHAI, EXCEPT SHIFTING BETWEEN CHANGJIANG KOU AND SHANGHAI. THEN
VSL TO TENDER NOR UPON ARRIVAL OTHER RIVERPORT(S) AT ANCHORAGE, TIME TO
COUNT 6 HRS THEREAFTER UNTIL HOSE DISCONNECTION AT OTHER
RIVERPORT(S), EXCEPT SHIFTING BETWEEN ANCHORAGE TO BERTH.
WAITING TIME FOR TIDE, PILOT AND TUGS AFTER NOR+6HRS TO BE FOR CHRTS
ACCOUNT.
IF SHANGHAI SOLE DISPORT THIS CLS NOT TO APPLY.

CORONAVIRUS CLAUSE
------------------
OWNERS CONFIRM THAT, AT THE TIME OF FIXING, ALL CREW IS IN GOOD
HEALTH AND FREE OF CORONA-VIRUS SYMPTOMS.

NOTWITHSTANING ANY OTHER CLAUSE IN THIS CP AND AT ANY OF
CHARTERERS' NOMINATED PORTS/PLACES, ANY DELAY AND/OR TIME LOST
(INCLUDING BUT NOT LIMITED TO DELAYS IN BERTHING, LOADING,
DISCHARGING AND/OR DEPARTING FROM SAME) DUE TO MEASURES ENACTED
BY LOCAL AUTHORITIES AND/OR DUE TO THE PORT/PLACE BECOMING CLOSED
BY LOCAL AUTHORITIES AS A RESULT OF INCIDENCE OF COVID-19
(HEREINAFTER CALLED A "CONTAGIOUS DISEASE"), INCLUDING
VESSEL/CREW QUARANTINE, SHALL BE FOR CHARTERERS' ACCOUNT AND
SHALL COUNT IN FULL AS LAYTIME OR TIME ON DEMURRAGE, IRRESPECTIVE
OF THE CONTAGIOUS DISEASE DELAY OCCURING PRIOR TO OR AFTER THE
EXPIRATION OF LAYTIME.

SAME ALSO TO APPLY WHERE A VALID NOR HAS NOT BEEN TENDERED OR
ACCEPTED DUE TO DELAY IN OBTAINING FREE PRATIQUE.

NOTWITHSTANDING ANY OTHER CLAUSE IN THIS C/P, SHOULD A
CHARTERERS' NOMINATED PORT/PLACE BE CLOSED DUE TO A "CONTAGIOUS
DISEASE", ALL COSTS INVOLVED (INCL BUT NOT LIMITED TO ANY AND ALL
BUNKERS USED) AND TIME WAITING TO BE FOR CHARTERERS ACCOUNT AND
TO COUNT AS LAYTIME OR DEMURRAGE IN FULL.

OWNERS TO HAVE THE RIGHT TO REFUSE TO CALL ANY PORTS WHICH ARE
OFFICIALLY CLOSED ~~OR DEEMED UNSAFE IN THE REASONABLE JUDGMENT OF~~
~~THE MASTER,~~ AND CHARTERERS TO ISSUE NEW DISCHARGE ORDERS WITHIN
THE AGREED RANGES. ANY DEVIATION AND/OR TIME LOST TO BE SETTLED
UNDER THE INTERIM PORT CLAUSE OF THE C/P ALONG WITH FREIGHT.

IF VESSEL IS DELAYED IN OBTAINING FREE PRATIQUE OR SERVICE FROM
ANY OTHER RELEVANT PARTY IN THE PORTS (IE PILOTS, STEVEDORES,
WATCHMEN) OR PREVENTED FORM ENTERING THE NOMINATED PORT(S) DUE TO
MEMBERS OF THE CREW ONBOARD BEING PROVEN TO BE INFECTED BY COVID-

19 AT THE CHARTERERS NOMINATED PORTS, THEN ALL TIME WAITING NOT
TO COUNT AS LAYTIME AND/OR TIME ON DEMURRAGE.

- INFECTIOUS DISEASE CLS -
A) FOR THE PURPOSES OF THIS CLAUSE, THE WORDS:
"DISEASE" MEANS A HIGHLY INFECTIOUS OR CONTAGIOUS DISEASE THAT IS
SERIOUSLY
HARMFUL TO HUMANS.
"AFFECTED AREA" MEANS ANY PORT OR PLACE WHERE THERE IS A RISK OF
EXPOSURE
TO THE VESSEL, CREW OR OTHER PERSONS ON BOARD TO THE DISEASE AND/OR TO
A
RISK OF QUARANTINE OR OTHER RESTRICTIONS BEING IMPOSED IN CONNECTION
WITH
THE DISEASE.
(B) THE VESSEL SHALL NOT BE OBLIGED TO PROCEED TO OR CONTINUE TO OR
REMAIN
AT ANY PLACE WHICH, IN THE REASONABLE JUDGEMENT OF THE MASTER/OWNERS,
BECOMES AN AFFECTED AREA AFTER THE DATE OF THIS CHARTER PARTY
(C) IN ACCORDANCE WITH SUB-CLAUSE (B):
(I) AT ANY TIME BEFORE LOADING COMMENCES, THE OWNERS MAY GIVE NOTICE TO
THE
CHARTERERS CANCELLING THIS CONTRACT OF CARRIAGE OR MAY REFUSE TO
PERFORM
SUCH PART OF IT AS WILL REQUIRE THE VESSEL TO ENTER OR REMAIN AT AN
AFFECTED
AREA;
(II) IF LOADING HAS COMMENCED, THE OWNERS MAY NOTIFY THE CHARTERERS
THAT
THE VESSEL WILL LEAVE WITH OR WITHOUT CARGO ON BOARD, PROVIDED ALWAYS
THAT
IF THE CHARTER PARTY PROVIDES THAT LOADING OR DISCHARGING IS TO TAKE
PLACE
WITHIN A RANGE OF PORTS, THE OWNERS SHALL FIRST REQUEST THE CHARTERERS
TO
NOMINATE ANY OTHER SAFE PORT WHICH LIES WITHIN THE RANGE FOR LOADING
AND
DISCHARGING AND MAY ONLY CANCEL THIS CHARTER PARTY OR LEAVE THE LOADING
PORT
IF THE CHARTERERS FAIL TO NOMINATE SUCH ALTERNATIVE SAFE PORT WITHIN
FORTYEIGHT
(48) HOURS OF RECEIPT OF NOTICE OF SUCH REQUEST. IF PART CARGO HAS
BEEN LOADED, OWNERS
HAVE THE OPTION TO CO-LOAD CARGO FROM OTHER
PARTIES/CHARTERERS AT OWNERS' ACCOUNT AT ANY OTHER PORT OR PORTS
PROVIDED
ALWAYS THAT SUCH OTHER PORT OR PORTS ARE ALONG THE CUSTOMARY ROUTE FOR
THE CHARTERED VOYAGE FOR THE CHARTERERS' PART CARGO.
(D) IF PRIOR TO OR AFTER ARRIVAL AND IN ACCORDANCE WITH SUB-CLAUSE (B)
THE
DISCHARGING PORT IS DETERMINED TO BE IN AN AFFECTED AREA, THE OWNERS
MAY
REQUEST THE CHARTERERS TO NOMINATE AN ALTERNATIVE SAFE PORT WHICH LIES
WITHIN THE CHARTER PARTY RANGE. IF THE CHARTERERS FAIL TO MAKE SUCH
NOMINATION WITHIN FORTY-EIGHT (48) HOURS OF RECEIPT OF THE OWNERS'
REQUEST,
THE OWNERS MAY DISCHARGE THE CARGO, OR SUCH CARGO REMAINING ON BOARD IF

DISCHARGING HAS NOT BEEN COMPLETED, AT ANY SAFE PORT OF THEIR CHOICE
(INCLUDING THE PORT OF LOADING) IN COMPLETE FULFILMENT OF THE CONTRACT
OF
CARRIAGE. IF DISCHARGE TAKES PLACE AT ANY PORT OTHER THAN THE LOADING
PORT
OR AT A PORT THAT LIES OUTSIDE THE RANGE OF PORTS IN THE CHARTER PARTY,
THE
OWNERS SHALL BE ENTITLED TO RECOVER FROM THE CHARTERERS THE EXTRA
EXPENSES
OF SUCH DISCHARGE, TO RECEIVE FULL FREIGHT AS IF THE CARGO HAD BEEN
CARRIED
TO THE DISCHARGING PORT AND, IF THE EXTRA DISTANCE EXCEEDS 100 MILES,
TO
ADDITIONAL FREIGHT WHICH SHALL BE THE SAME PERCENTAGE OF THE FREIGHT
CONTRACTED FOR AS THE PERCENTAGE WHICH THE EXTRA DISTANCE REPRESENTS TO
THE
DISTANCE OF THE NORMAL AND CUSTOMARY ROUTE. .
(E) THE OWNERS SHALL NOT BE OBLIGED TO SIGN, AND THE CHARTERERS SHALL
NOT
ALLOW OR AUTHORISE THE SIGNING OF, BILLS OF LADING, WAYBILLS OR OTHER
DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE FOR ANY AFFECTED AREA.
(F) IF, NOTWITHSTANDING SUB-CLAUSES (B) TO (E), THE VESSEL DOES PROCEED
TO
OR CONTINUE TO OR REMAIN AT AN AFFECTED AREA:
(I) THE OWNERS SHALL NOTIFY THE CHARTERERS OF THEIR DECISION, BUT THE
OWNERS SHALL NOT BE DEEMED TO HAVE WAIVED ANY OF THEIR RIGHTS UNDER
THIS
CHARTER PARTY.
(II) THE OWNERS SHALL ENDEAVOUR TO TAKE SUCH REASONABLE MEASURES IN
RELATION TO THE DISEASE AS MAY FROM TIME TO TIME BE RECOMMENDED BY THE
WORLD
HEALTH ORGANISATION.
(III) ANY ADDITIONAL COSTS AND EXPENSES INCURRED AT ANY LOAD OR
DISCHARGE
PORT(S) UNDER THIS CHARTER ARISING OUT OF THE VESSEL VISITING OR HAVING
VISITED AN AFFECTED AREA PURSUANT TO THE CHARTERERS' INSTRUCTIONS,
INCLUDING
BUT NOT LIMITED TO SCREENING, CLEANING, FUMIGATING AND/OR QUARANTINING
THE
VESSEL AND ITS CREW SHALL BE FOR THE CHARTERERS' ACCOUNT. ANY TIME LOST
SHALL COUNT AS FULL LAY-TIME OR FULL ON DEMURRAGE, PROVIDED THAT THE
CAUSE OF THE DELAY AND THE EXTENT OF THE DELAY RESULTING COULD NOT
REASONABLY HAVE BEEN PREVENTED BY OWNERS.
(G) THE VESSEL SHALL HAVE LIBERTY TO COMPLY WITH ALL ORDERS,
DIRECTIONS,
RECOMMENDATIONS OR ADVICE OF COMPETENT AUTHORITIES AND/OR THE FLAG
STATE OF
THE VESSEL IN RESPECT OF ARRIVAL, ROUTES, PORTS OF CALL, DESTINATIONS,
DISCHARGE OF CARGO, DELIVERY OR IN ANY OTHER RESPECT WHATSOEVER
RELATING TO
ISSUES ARISING AS A RESULT OF THE VESSEL BEING OR HAVING BEEN ORDERED
TO AN
AFFECTED AREA.
(H) IF IN COMPLIANCE WITH THIS CLAUSE ANYTHING IS DONE OR NOT DONE,
SUCH
SHALL NOT BE DEEMED A DEVIATION BUT SHALL BE CONSIDERED AS DUE
FULFILMENT OF

THIS CHARTER PARTY. IN THE EVENT OF A CONFLICT BETWEEN THE PROVISIONS OF
THIS CLAUSE AND ANY IMPLIED OR EXPRESS PROVISION OF THIS CHARTER PARTY, THIS
CLAUSE SHALL PREVAIL TO THE EXTENT OF SUCH CONFLICT, BUT NO FURTHER.
(I) THE CHARTERERS SHALL INDEMNIFY THE OWNERS FOR CLAIMS ARISING OUT OF THE
VESSEL PROCEEDING IN ACCORDANCE WITH ANY OF THE PROVISIONS OF SUB-CLAUSES
(B) TO (H) WHICH ARE MADE UNDER ANY BILLS OF LADING, WAYBILLS OR OTHER
DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE.

- DISCHARGE/BACKLOADING - NO BACKLOADING FOR THIS VOYAGE OWNERS GRANTED
SAME IN CHOPTNS TBD BEFORE TENDER NORT AT 1ST LOADPORT EX SS BRILLANCE
HOWEVER MAX 1 OPERATION ONLY PERMISSIBLE BASIS IN DIRECT CONTINUATION
FOR DISCAHRGE SPORE - LINGGI RANCE BASIS
LUMPSUM BELOW.
FREIGHT : LUMPSUM USD 210,000 BSS 1:1
          PAYABLE ALWAYS BEFORE LOADING OPERATION
          ALL STS, PORT COST INCLUSIVE OF AGENCY FEES FOR STS / FSU
          DISCHARGE IS FOR CHARTERERS ACCOUNT AND TO BE SETTLED DIRECTLY
DEMURRAGE : USD 19,000 PER DAY PRO RATA
LAYTIME   : TOTAL 96 HOURS SHING

-AMENDMENTS TO ASBATANK C/P
=============================

-CLAUSE 01: LINE 2: REPLACE "ALL CONVENIENT" WITH "UTMOST". - OK

-CLAUSE 02: LINE 1: AFTER "ON INTAKE" INSERT "GROSS" - OK

           LINE 2: DELETE FROM "LESS ANY DISBURSEMENTS....COST
                   OF INSURANCE THEREON" IN LINE 3.

-CLAUSE 04: DELETE IN FULL PARAGRAPHS (A) AND (B).

-CLAUSE 05: LINE 3: DELETE "SUCH CANCELLATION DATE" AND INSERT "OWNERS'
SUBMISSION OF CHARTERER'S RECEIPT OF OWNERS OFFICIAL REQUEST FOR A NEW
CANCELLING DATE"

-CLAUSE 06: LINE 2: AFTER "TELEPHONE" INSERT "FAX, OR EMAIL".
           LINE 3: DELETE "RECEIPT" INSERT "TENDER". - OK

           ADD AT THE END, CHARTERERS' WILL BE ENTITLED TO 6 HOURS NOR
           NOTICE AND DEDUCTION FROM SHIFTING FROM ANCHORAGE TO THE
           FIRST BERTH, EVEN IF VESSEL IS ON DEMURRAGE. - OK

-CLAUSE 07: LINE 3: AFTER "TIME SO LOST SHALL" DELETE "NOT". - MAINTAIN
           LINE 5: AFTER "SLOPS" INSERT "UNLESS CONCURRENTLY WITH
LOADING AND/OR DISCHARGING OPERATIONS".

-CLAUSE 09: LINE 04 BEFORE "TOWAGE" INSERT "BUNKERS" - OK

-CLAUSE 10: LINE 3: DELETE "IF REQUIRED BY CHARTERER ........ ALLOWED
LAYTIME" IN LINE 4

LINE 4: AFTER "NECESSARY HANDS" INSERT "BUT MAXIMUM AS PER VESSEL'S SAFE MANNING CERTIFICATE".
LINE 5: AFTER "SHALL SUPPLY, AT ITS" INSERT "TIME AND" – OK

-CLAUSE 14: LINE 4: IN PARAGRAPH (A), AFTER "PART I" INSERT "PLUS COST OF BUNKERS CONSUMED AT THE PRICE AS PER THE LAST BUNKER INVOICE".
LINE 7: IN PARAGRAPH (B), DELETE IN FULL "OR TO REMAIN AT THE ORIGINAL PORT AT THEIR RISK, AND IN EITHER CASE" IN LINE 8.
LINE 8: AFTER "PART I" INSERT "PLUS COST OF BUNKERS CONSUMED AT THE PRICE AS PER THE LAST BUNKER INVOICE". – OK

-CLAUSE 16: TO BE DELETED IN FULL. – OK

-CLAUSE 20: ISSUANCE AND TERMS OF BILLS OF LADING

B(I) CLAUSE PARAMOUNT

REPLACE THE WHOLE PARAGRAPH AS "THIS BILL OF LADING SHALL BE GOVERNED BY, AND HAVE EFFECT SUBJECT TO THE RULES CONTAINED IN THE INTERNATIONAL CONVENTION FOR THE UNIFICATION OF CERTAIN RULES RELATING TO BILLS OF LADING SIGNED AT BRUSSELS ON 25TH AUGUST 1924. (HEREAFTER THE "HAGUE RULES") AS AMENDED BY THE PROTOCOL SIGNED AT BRUSSELS ON 23RD FEBRUARY 1968 (HEREAFTER THE "HAGUE-VISBY RULES"), SUBJECT TO GOVERNING LEGISLATION WHICH APPLIES THE HAGUE RULES OR THE UNITED NATIONS CONVENTION ON THE CARRIAGE OF GOODS BY SEA 1978 (HEREAFTER THE "HAMBURG RULES") COMPULSORILY TO THIS BILL OF LADING TO THE EXCLUSION OF HAGUE-VISBY RULES." – OK

-CLAUSE 25: TO BE DELETED IN FULL. – OK

CHINA OIL SPECIAL PROVISIONS
----------------------------
EARLY LOADING CLS : (MAINTAIN)
2ND LINE AFTER "THAT" PLS INSERT "50 PCT OFF"

~~PLS ADD AT THE END OF THE CLAUSE, FOR FUTURE FIXTURES SINCE IT IS N/A IN OUR CASE:~~

~~HOWEVER, IF CHARTERERS HAVE NARROWED THE ORIGINAL LAYCAN WINDOW AND IF VESSEL LOADS ANY DAY BEFORE THE START OF THE NARROWED WINDOW LAYCAN WHICH WAS PART OF THE ORIGINAL LAYCAN SPREAD, EARLY LOADING AS ABOVE SHALL NOT APPLY AND 100 PERCENT OF THE TIME FROM VESSEL'S COMMENCEMENT OF LOADING TILL 00:01 ON THE FIRST DECLARED LAYDAY TO COUNT.~~

WEATHER CLAUSE
IF VESSEL LOADS AND/OR DISCHARGES AT ANY OFFSHORE MOORING, SEA BERTH OR BERTH EFFECTED BY PREVAILING WEATHER OR SEA CONDITIONS, SHIP TO SHIP TRANSFER INCLUDING LIGHTERING, ANY DELAYS DUE TO BAD WEATHER AND OR SEASWELL, FOG OR ANY OTHER PREVAILING CONDITIONS IS TO COUNT IN FULL AS LAYTIME OR DEMURRAGE IF VSL IS ON DEMURRAGE. SHOULD THE MASTER, PILOT OR ANY LOCAL AUTHORITY DEEM IT NECCESSARY TO HAVE TUGS STANDING-BY, SHIFT THE VESSEL, OR REQUIRE ANY OTHER ADDITIONAL EQUIPMENT OR SERVICES TO MAINTAIN THE SAFETY OF THE VESSEL AND/OR MOORING EQUIPMENT, THEN ANY AND ALL ADDITIONAL EXPENSES INCURRED TO BE FOR CHRTRS ACCT AND SETTLED DIRECTLY BY THEM.

TIDE AND DAYLIGHT CLS : - ONLY FOR THIS VOYAGE 1ST LINE AFTER "TIDE"
INSERT "UPTO MAX 12 HRS"
1ST LINE AFTER 'WAITING FOR' PLS ADD 'FIRST SUITABLE' - OK

SUNSET CLS : DELETE IN FULL
1ST LINE DELETE "15:00" INSERT "16:00"
2ND LINE DELETE "07:00" INSERT "06:00"

SCANPORTS LIGHTERING EXECUTION (LOADING) CLAUSE (AMENDED DELETE AND
INSERT THE FOLLOWING:
-

SHIP TO SHIP TRANSFER CLAUSE - WE WOULD FEEL MORE COMFORTABLE TO HAVE
OUR OWN CLS, PLS DELETE AND REPLACE WITH OUR BELOW: - WORKABLE

CHARTERERS HAVE THE OPTION TO LOAD OR DISCHARGE THE VESSEL VIA SHIP-TO-
SHIP TRANSFER, WEATHER PERMITTING
AND SUBJECT TO MASTER'S APPROVAL WHICH IS NOT TO BE UNREASONABLY
WITHHELD, AT A SAFE PLACE AT ANCHOR OR UNDERWAY.
CHARTERERS TO PROVIDE AND PAY ONBOARD ALL NECESSARY EQUIPMENT,
INCLUDING HOSES AND ADEQUATE AND SUFFICIENT NUMBER
OF YOKOHAMA FENDERS OF ADEQUATE SIZE, FOR SUCH SAFE LIGHTERING
OPERATION TO MASTER'S FULL SATISFACTION WHICH IS NOT
TO BE UNREASONABLY WITHHELD. CHARTERERS SHALL ARRANGE SUPERVISORY
PERSONNEL ON BOARD, INCLUDING MOORING MASTER TO
ASSIST THE PERFORMANCE OF THE LIGHTERING OPERATIONS.

CHARTERERS SHALL EXERCISE DUE DILIGENCE TO ENSURE THAT ANY SHIP-TO-SHIP
TRANSFER OPERATIONS SHALL CONFORM TO
STANDARDS NOT LESS THAN THOSE SET OUT IN THE LATEST PUBLISHED EDITION
OF THE ICS/OCIMF SHIP-TO-SHIP TRANSFER GUIDE.

THE MASTER HAS THE RIGHT TO SUSPEND OR ABORT THE LIGHTERING OPERATION,
IF IN HIS SOLE OPINION WHICH IS NOT TO BE
UNREASONABLY WITHHELD, THE SAFETY OF THE VESSEL OR THE SMOOTH CONDUCT
OF THE OPERATION IS IN JEOPARDY, IN WHICH
CASE THE VESSEL WILL CONTINUE TO REMAIN ON HIRE AND ALL EXPENSE WILL BE
FOR CHARTERER'S ACCOUNT.

THE VESSEL SHALL NOT BE EMPLOYED IN CONTINUOUS LIGHTERING OPERATIONS
UNLESS OTHERWISE MUTUALLY AGREED.

CHARTERERS MAY REQUEST FROM OWNERS ADDITIONAL LIGHTERING / STS
OPERATIONS IN WHICH OWNERS WILL DECIDE ON EACH CASE.

CHARTERERS TO ADVISE FULL DETAILS OF STS OPERATIONS IN ADVANCE TO
MASTER INCLUDING NAME OF THE VESSEL, NUMBER AND
SIZE AND PLACE OF FENDERS AND THE STS PROVIDER POAC DETAILS FOR OWNERS
REFERENCE. EXTRA COST OF INSURANCE 'IF ANY'
TO BE FOR CHARTERER'S ACCOUNT

TIME TO COUNT IN FULL AFTER TENDERING NOR + 6HOURS OR UNTIL ALL
LIGHTERAGE EQUIPMENT INCLUDING MOORING MASTER IS
OFF AND VESSEL READY TO SAIL. TIME LOST DUE TO AND/OR WEATHER AND/OR
SEA CONDITIONS TO COUNT IN FULL AS LAYTIME

OR DEMURRAGE IF ON DEMURRAGE. CP PUMPING WARRANTY  NOT TO APPLY WHEN
STS/LIGHTERING    TAKES    PLACE.    IF    THE    VESSEL    IS
REQUIRED TO COMPLETE CARGO OPERATION AT A BERTH IN PORT CHARTERERS
WILL    NOT    HAVE    THE    BENEFIT    OF    6    HOURS    NOR
PRIOR BERTHING IN PORT. CHARTERERS WARRANT THAT THERE IS NO PROHIBITION
OR    RESTRICTION    ON    STS    OPERATION    AT    THE
PORT/PLACE TO WHICH THE VESSEL IS ORDERED  TO PERFORM STS TRANSFER AND
FURTHER    THAT    THEY    HAVE    OBTAINED    ANY/ALL
NECESSARY LOCAL APPROVALS OR LICENCES TO CARRY OUT OPERATIONS AT THE
DESIGNATED PORT/PLACE.

EUROTANKERS SHIP TO SHIP TRANSFER CLAUSE – DELETE WRITTEN LAST
=====================================
IF STS TRANSFER OPERATION IS REQUIRED, CHARTERERS TO PROVIDE AT THEIR
LIABILITY/RESPONSIBILITY, TIME, COST AND EXPENSE, ALL NECESSARY/
REQUIRED LIGHTERING EQUIPMENT INCLUDING BUT NOT LIMITED TO 4 YOKOHAMA
OR EQUIVALENT TYPE  AND 2 BABY FENDERS, SUITABLE FOR THIS TYPE OF
VESSEL, HOSES PLUS MOORING MASTER AND LIGHTERING PERSONNEL. ALL STS
TRANSFER OPERATIONS, STS SERVICE PROVIDER, PERSON IN OVERALL ADVISORY
CONTROL AND EQUIPMENT (FENDERS & HOSES) TO BE ALWAYS IN COMPLIANCE WITH
MARPOL 73/78 ANNEX 1 CHAPTER 8 AND THE LATEST RELEVANT INTERNATIONAL
STANDARDS & GUIDANCE OF OCIMF, PERFORMED AT LAWFUL AND CUSTOMARY
PLACES, SAFELY ANCHORED, WEATHER PERMITTING AND SUBJECT TO THE MASTERS
SATISFACTION WITH REGARDS TO SAFETY.

MOORING/UNMOORING OPERATIONS TO BE PERFORMED ALWAYS DURING DAYLIGHT.
DURING STS OPERATIONS ONE WORK-BOAT ALWAYS TO BE IN ATTENDANCE. ALL
TIME FOR LOADING/OFFLOADING STS EQUIPMENT TO BE FOR CHARTERERS'
ACCOUNT. ALL TIME TO COUNT IN FULL AS LAYTIME OR DEMURRAGE, IF VESSEL
IS ON DEMURRAGE WEATHER PERMITTING OR NOT FROM ARRIVAL AT THE STS
LOCATION UNTIL LAST LIGHTER IS AWAY, ALL FENDERS AND LIGHTERING GEAR
HAVE BEEN REMOVED AND CHARTERERS'AND/OR THEIR AGENTS' PERSONNEL HAVE
DISEMBARKED. 6 HOURS NOR ALLOWANCE NOT TO APPLY. FOR STS, ALL PORT
CHARGES/DISBURSEMENTS INCLUDING TOWAGE CHARGES AND AGENCY FEES, IF ANY,
TO BE FOR CHARTERERS' ACCOUNT AND TO BE SETTLED DIRECTLY
BY THEM. CHARTERERS TO ARRANGE STS PERMISSION FROM RELEVANT AUTHORITIES
AT THEIR TIME, COST AND EXPENSE. LIGHTERING VESSELS EMPLOYED BY
CHARTERERS TO BE SEAWORTHY AND IN CLASS WITH A MEMBER OF THE
INTERNATIONAL ASSOCIATION OF CLASSIFICATION SOCIETIES (IACS) AND
ENTERED WITH A P+I CLUB WITHIN THE INTERNATIONAL GROUP OF P+I CLUBS.'

SPEED ADJUSTMENT CLS : --DELETE

11. INSPECTOR CLAUSE
CHARTERERS' PRIVILEGE TO PUT CHARTERERS' INSPECTOR ON VESSEL AT LOAD
AND DISCHARGE PORT AFTER SIGNING RELEVANT LOI AND ALWAYS AT CHARTS AT
THEIR  RISK AND EXPENSE. INSPECTOR NOT TO INTERFERE WITH OR DELAY
VESSEL'S SCHEDULE OR OPERATION.

OCEANROUTING CLS : --N/A

WAR RISK PREMIUM CLS : --DELETE

15. RULES AND REGULATIONS **– OK**
TO THE BEST OF OWNER'S KNOWLEDGE ~~THAT~~ THE VESSEL WILL COMPLY WITH **ONLY THE APPLICABLE** RULES AND REGULATIONS AT LOAD PORT AND DISCHARGE PORT, AND OWNERS SHALL COMPLY WITH ALL REQUIREMENTS OF THE GOVERNMENT AND ALL AUTHORITIES AND AGENCIES WHICH MAY HAVE AUTHORITY WITH RESPECT TO THESE RULES AND REGULATIONS.

BASHAY**ER** SBT CLS :--N/A

ISRAEL CLS : --N/A

CANCELLING CLAUSE: DELETE "48 HOURS" INSERT " TWO(2) WORKING DAYS " **PLS DELETE AND REPLACE WITH OUR BELOW:**

**EUROTANKERS CANCELLATION CLAUSE**
**============================**
**SHOULD IT BECOME EVIDENT THAT THE VSL CANNOT ARRIVE AT THE LOADPORT WITHIN AGREED LAYCAN, OWNERS TO ADVISE CHRTRS IMMEDIATELY AND CHRTRS HAVE 2 RUNNING DAYS TO EITHER EXTEND THE C/P WITH NEW LAYCAN REQUESTED BY OWNERS OR CANCEL THE C/P WITHOUT ANY DAMAGES TO EITHER PARTY. IF CHARTERERS FAIL TO REPLY WITHIN 2 RUNNING DAYS, LAYCAN IS EXTENDED AUTOMATICALLY AS PER OWNERS' REQUEST AND THE C/P IS MAINTAINED. LAYTIME SHALL COMMENCE UPON VESSEL TENDERS N.O.R. IF CHARTERERS ELECT TO DECLINE, THEN C/P SHALL BE CANCELLEDWITHOUT RECOURSE TO EITHER PARTY. (AFTER RUNNING INSERT "WORKING")**

SUPERINTENDENT CLS: AFTER "OWNERS ACCT" ADD "MAX USD~~3,000~~" **(MAX 2,000 FOR OWNERS ACCOUNT REST TO BE FOR CHARTERERS) – DELETE, N/A FOR THIS VOYAGE**

RIDER TERMS
-----------
5. ADD AT THE END OF THE CLS "OR 48HRS AFTER TENDERING NOR, WHICHEVER OCCURS 1ST." AMEND 1600 TO 2359

6. DELETE FROM BEGINNING TO "PORT(S)", **– PLS DELETE ENTIRE CLAUSE AND REPLACE WITH OUR BELOW:**
REPLACE WITH "~~IF DISCHARGEPORT IS SINGAPORE OWNERS AGENT (AGENT IS CORY BROTHER), ALL OTHER PORTS CHARTERER'S AGENT PROVIDED COMPETITIVE.~~ CHARTERERS AGENTS BOTH ENDS PROVIDED COMPETITIVE ~~BUT IF LOADING SINGAPORE THIS CLAUSE APPLIES FOR THIS VOYAGE ONLY " N/A~~

~~EUROTANKERS AGENCY CLAUSE~~ **OK**

~~============================~~
~~OWNERS TO APPOINT CHARTERERS' NOMINATED AGENT PROVIDED THEY ARE COMPETENT AND COMPETITIVE ON PRICE AND SERVICE. AGENTS ALWAYS TO BE VETTED AND AGREED BY OWNERS, WHICH NOT TO BE UNREASONABLY WITHHELD.~~

9. 2ND LINE PLS DELETE "OWNERS'" INSERT "CHARTERERS'" --N/A FOR THIS VOYAGE.

11. **GENERAL AVERAGE / ARBITRATION IN LONDON, ENGLISH LAW TO APPLY AS PER LMAA RULING. HOWEVER,** SHOULD A DISPUTE ARISE BETWEEN OWNERS AND THE CHARTERERS, BOTH PARTIES WILL ENDEAVOUR TO SETTLE THE MATTER IN DISPUTE

AMICABLY OTHERWISE SAME TO BE SETTLED IN LONDON BY ARBITRATION AS PER CHARTER PARTY. **— OK**

RIDER CLAUSES
-------------
01. CLEAN BALLAST CLAUSE **(MAINTAIN)**

THE VESSEL SHALL ARRIVE AT LOAD PORT WITH CLEAN AND MINIMUM BALLAST WATER.
~~THE VESSEL SHOULD ARRIVE AT LOAD PORT WITH CLEAN BALLAST WATER IN SBT ONLY. ANY DIRTY BALLAST WATER OR CLEAN BALLAST WATER IN CBT SHOULD BE DISCHARGED ON TO THE SHORE, AND ALL FEES OR CHARGES THUS INCURRED SHOULD BE FOR OWNER'S ACCOUNT.~~

2. 1 ST LINE AFTER "SHIFTING" INSERT "TIME AND"
'IT IS UNDERSTOOD AND AGREED THAT SUCH EXPENSES ARE TO INCLUDE BUNKER COSTS AT PRICE OF LAST SUPPLY AGAINST MASTER'S SIGNED STATEMENT OF CONSUMPTION.'

3. 2ND PARA 4TH LINE DELETE "DISTRIBUTED" INSERT "PRESENTED" **— DELETE ALL AND REPLACE WITH OUR BELOW:** ~~2ND PARA 4TH LINE DELETE "FOR" INSERT "BY"~~

A) IF CHARTERERS BY FACSIMILE, EMAIL OR OTHER FORM OF WRITTEN COMMUNICATION REQUEST OWNERS TO DISCHARGE A QUANTITY OF CARGO EITHER:

I. WITHOUT AN ORIGINAL BILL OF LADING; AND/OR
II. AT A DISCHARGE PORT OR PLACE OTHER THAN THAT NAMED IN THE BILL OF LADING; AND/OR

III. THAT IS DIFFERENT FROM THE BILL OF LADING QUANTITY,

THEN OWNERS SHALL DISCHARGE SUCH CARGO IN ACCORDANCE WITH CHARTERERS' INSTRUCTIONS IN CONSIDERATION OF RECEIVING CHARTERERS' INDEMNITY IN  "OWNERS PNI CLUB WORDING ~~ATTACHED TO THIS FIXTURE RECAP" THE INDEMNITY IN THE WORDINGS ATTACHED TO THIS FIXTURE RECAP SHALL BE DEEMED TO BE GIVEN BY CHARTERERS ON EACH AND EVERY OCCASION WHEN CHARTERERS FURNISH WRITTEN NOTICE TO OWNERS WHICH UNEQUIVOCALLY AND SPECIFICALLY INVOKES THIS CLAUSE IN RESPECT OF THE AFORESAID CHARTERERS' INSTRUCTIONS (THE "DEEMED INDEMNITY").~~

~~(B) ANY DEEMED INDEMNITY SHALL AUTOMATICALLY BE NULL, VOID AND TERMINATED AND CHARTERERS' LIABILITY UNDER THE DEEMED INDEMNITY SHALL CEASE ABSOLUTELY AND IMMEDIATELY UPON PRESENTATION TO OWNERS OF ONE OF THE THREE ORIGINAL BILLS OF LADING FOR THE CARGO LOADED, OR AT 24:00 HOURS SINGAPORE TIME ON THE DAY 13 CALENDAR MONTHS AFTER THE DATE OF COMPLETION OF DISCHARGE, WHICHEVER OCCURS FIRST.~~

~~(C) ANY DEEMED INDEMNITY SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW AND ANY DISPUTE ARISING OUT OF OR IN CONNECTION WITH THE DEEMED INDEMNITY SHALL BE SUBJECT TO THE JURISDICTION OF THE HIGH COURT OF JUSTICE OF ENGLAND.~~

~~(D) IN THE EVENT OF ANY INCONSISTENCY BETWEEN THE TERMS AND CONDITIONS OF THIS CLAUSE AND THE TERMS AND CONDITIONS OF THE~~

~~DEEMED INDEMNITY, OR IN RESPECT OF ANY MATTERS NOT PROVIDED FOR IN THE TERMS AND CONDITIONS OF THE DEEMED INDEMNITY, THE TERMS AND CONDITIONS OF THIS CLAUSE SHALL PREVAIL AND SHALL BE DEEMED INCORPORATED INTO THE DEEMED INDEMNITY.~~

4. 3RD LINE DELETE "60" INSERT "90"

5. DELETE 3ND PARA **– OK**

(A) ~~OWNERS WARRANT~~ **TO THE BEST OF OWNERS KNOWLEDGE**

(B) ~~OWNERS WARRANT THAT~~**TO THE BEST OF OWNERS KNOWLEDGE**

(C) ~~OWNERS WARRANT THAT~~ **TO THE BEST OF OWNERS KNOWLEDGE**
4TH PARA DELETE "AND SHALL COMPLY WITH THE U.S.COAST GUARD REGULATIONS FOR CRUDE OIL DISCHARGES"

6. 1ST LINE AFTER "HOURS" INSERT "+3 HRS FOR STRIPPING"

8. (B) PLS DELETE N/A

9. 1ST PARA 2ND LINE DELETE "DEDUCT" INSERT "CLAIM"
1ST PARA 4TH LINE AFTER "PUMPABLE" INSERT ",LIQUID AND REACHABLE BY VESSEL'S ~~PUMPS"~~ **FIXED EQUIPMENT** AS DETERMINED BY ~~AN INDEPENDENT SURVEYOR~~. **2 INTERNATIONALLY REPUTED DISPORT INDEPENDENT SURVEYORS MUTUALLY APPOINTED AND PAID BY OWNS AND CHRTS.**

**IN THE EVENT OF ANY DISPUTE BETWEEN THE REPORTS ISSUED BY THE TWO INDEPENDENT SURVEYORS, A THIRD MUTUALLY ACCEPTED SURVEYOR TO BE APPOINTED AND TO BE PAID ON A 50-50 BSS BY OWNERS AND CHARTERERS WHOSE FINDINGS SHALL BE FINAL AND BINDING.**
**ANY ROB CLAIM UNDER THIS CLAUSE SHALL ALWAYS CONSIDER TO TAKE INTO ACCOUNT THE OBQ LIQUID HYDROCARBON QUANTITY AT LOADPORT AS DETERMINED BY THE INDEPENDENT**
**SURVEYOR FOR OFF-SETTING AGAINST THE ROB LIQUID ON COMPLETION OF DISCHARGE.** MAINTAIN LAST

**11. SPILLAGE CLAUSE – OK**
**LINE 4 AFTER** 'ANY INDICATION OF A' **PLS INSERT** '**PROVEN CAUSED BY SHIP**'

12. DELETE, SEE EARLIER OWNERS' STS CLAUSE ~~2ND PARA 3RD LINE AFTER "WEATHER" INSERT "OR SEA" 2ND PARA 4TH LINE DELETE TWICE "HALF" INSERT TWICE "FULL" – PLS DELETE THE ENTIRE CLS AND REPLACE WITH THE BELOW:~~

~~EUROTANKERS SHIP TO SHIP TRANSFER CLAUSE~~ MAINTAIN LAST
~~=================================================================~~
~~IF STS TRANSFER OPERATION IS REQUIRED, CHARTERERS TO PROVIDE AT THEIR LIABILITY/RESPONSIBILITY, TIME, COST AND EXPENSE, ALL NECESSARY/REQUIRED LIGHTERING EQUIPMENT INCLUDING BUT NOT LIMITED TO 4 YOKOHAMA OR EQUIVALENT TYPE AND 2 BABY FENDERS, SUITABLE FOR THIS TYPE OF VESSEL, HOSES PLUS MOORING MASTER AND LIGHTERING PERSONNEL. ALL STS TRANSFER OPERATIONS, STS SERVICE PROVIDER, PERSON IN OVERALL ADVISORY CONTROL AND EQUIPMENT (FENDERS & HOSES) TO~~

~~BE ALWAYS IN COMPLIANCE WITH MARPOL 73/78 ANNEX 1 CHAPTER 8 AND THE LATEST~~
~~RELEVANT INTERNATIONAL STANDARDS & GUIDANCE OF OCIMF, PERFORMED AT LAWFUL AND~~
~~CUSTOMARY PLACES, SAFELY ANCHORED, WEATHER PERMITTING AND SUBJECT TO THE MASTERS~~
~~SATISFACTION WITH REGARDS TO SAFETY.~~

~~MOORING/UNMOORING OPERATIONS TO BE PERFORMED ALWAYS DURING DAYLIGHT.~~
~~DURING STS OPERATIONS ONE WORK-BOAT ALWAYS TO BE IN ATTENDANCE. ALL~~
~~TIME FOR LOADING/OFFLOADING STS EQUIPMENT TO BE FOR CHARTERERS'~~
~~ACCOUNT. ALL TIME TO COUNT IN FULL AS LAYTIME OR DEMURRAGE, IF VESSEL~~
~~IS ON DEMURRAGE WEATHER PERMITTING OR NOT FROM ARRIVAL AT THE STS~~
~~LOCATION UNTIL LAST LIGHTER IS AWAY, ALL FENDERS AND LIGHTERING GEAR~~
~~HAVE BEEN REMOVED AND CHARTERERS'AND/OR THEIR AGENTS' PERSONNEL HAVE~~
~~DISEMBARKED. 6 HOURS NOR ALLOWANCE NOT TO APPLY. FOR STS, ALL PORT~~
~~CHARGES/DISBURSEMENTS INCLUDING TOWAGE CHARGES AND AGENCY FEES, IF ANY,~~
~~TO BE FOR CHARTERERS' ACCOUNT AND TO BE SETTLED DIRECTLY BY THEM.~~
~~CHARTERERS TO ARRANGE STS PERMISSION FROM RELEVANT AUTHORITIES AT THEIR~~
~~TIME,COST AND EXPENSE. LIGHTERING VESSELS EMPLOYED BY CHARTERERS~~
~~TO BE SEAWORTHY AND IN CLASS WITH A MEMBER OF THE INTERNATIONAL~~
~~ASSOCIATION OF CLASSIFICATION SOCIETIES (IACS) AND ENTERED~~
~~WITH A P+I CLUB WITHIN THE INTERNATIONAL GROUP OF P+I CLUBS.'~~

**13. AFRAN (GULF) LIGHTERAGE CLAUSE - DELETE** – **OK NA FOR THIS VOYAGE**

14. DELETE --NOT APPLICABLE FOR THIS VOYAGE.

16. DELETE N/A

17. DELETE AS PER MAINTERMS

18. DELETE N/A

19. DELETE "CHINA NATIONAL UNITED OIL CORPORATION" INSERT "WELLBRED CAPITAL PT LTD"

**20. SLOP CLAUSE - PLS DELETE AND REPLACE WITH THE BELOW**

**EUROTANKERS SLOP CLAUSE   - OK**
========================
IF ANY SLOPS ARE ON BOARD AT TIME OF CONFIRMING FIXTURE, MASTER SHALL
REPORT EXACT QUALITY AND CONTENT OF OIL AND, WATER AND ANY CHEMICAL
USED (GIVING A SEPARATE ESTIMATED QUANTITY OF EACH), AND PRECISE
LOCATION OF THE SLOPS.
CHARTERERS SHALL HAVE THE OPTION OF INSTRUCTING OWNERS TO LOAD CARGO ON
TOP OF SLOPS, FAILING WHICH - NO LOADING OF CARGO ON TOP OF SLOPS IS
PERMITTED.
OWNERS WARRANT THAT VESSEL CAN COMPLY WITH THE CHARTER PARTY MINIMUM
CARGO QUANTITY. NO FREIGHT IS PAYABLE ON SLOPS WHETHER CARRIED,
DISCHARGED OR NOT.

21. DELETE N/A

**LAW AND LITIGATION CLAUSE**

(A)  THIS CONTRACT SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE
WITH ENGLISH LAW AND ANY DISPUTE ARISING OUT OF
OR IN CONNECTION WITH THIS CONTRACT SHALL BE REFERRED TO ARBITRATION IN
LONDON IN ACCORDANCE WITH THE ARBITRATION
ACT 1996 OR ANY STATUTORY MODIFICATION OR RE-ENACTMENT THEREOF SAVE TO
THE EXTENT NECESSARY TO GIVE EFFECT TO THE
PROVISIONS OF THIS CLAUSE.

THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE LONDON
MARITIME ARBITRATORS ASSOCIATION (LMAA) TERMS CURRENT
AT THE TIME WHEN THE ARBITRATION PROCEEDINGS ARE COMMENCED.

THE REFERENCE SHALL BE TO THREE ARBITRATORS. A PARTY WISHING TO REFER A
DISPUTE TO ARBITRATION SHALL APPOINT ITS
ARBITRATOR AND SEND NOTICE OF SUCH APPOINTMENT IN WRITING TO THE OTHER
PARTY REQUIRING THE OTHER PARTY TO APPOINT
ITS OWN ARBITRATOR WITHIN 14 CALENDAR DAYS OF THAT NOTICE AND STATING
THAT IT WILL APPOINT ITS ARBITRATOR AS
SOLE ARBITRATOR UNLESS THE OTHER PARTY APPOINTS ITS OWN ARBITRATOR AND
GIVES NOTICE THAT IT HAS DONE SO WITHIN
THE 14 DAYS SPECIFIED.  IF THE OTHER PARTY DOES NOT APPOINT ITS OWN
ARBITRATOR AND GIVE NOTICE THAT IT HAS DONE
SO WITHIN THE 14 DAYS SPECIFIED, THE PARTY REFERRING A DISPUTE TO
ARBITRATION MAY, WITHOUT THE REQUIREMENT OF
ANY FURTHER PRIOR NOTICE TO THE OTHER PARTY, APPOINT ITS ARBITRATOR AS
SOLE ARBITRATOR AND SHALL ADVISE THE
OTHER PARTY ACCORDINGLY.  THE AWARD OF A SOLE ARBITRATOR SHALL BE
BINDING ON BOTH PARTIES AS IF HE HAD BEEN
APPOINTED BY AGREEMENT.

NOTHING HEREIN SHALL PREVENT THE PARTIES AGREEING IN WRITING TO VARY
THESE PROVISIONS TO PROVIDE FOR THE APPOINTMENT OF A SOLE ARBITRATOR.

IN CASES WHERE NEITHER THE CLAIM NOR ANY COUNTERCLAIM EXCEEDS THE SUM
OF USD 50,000 (OR SUCH OTHER SUM AS THE PARTIES MAY
AGREE) THE ARBITRATION SHALL BE CONDUCTED IN ACCORDANCE WITH THE LMAA
SMALL CLAIMS PROCEDURE CURRENT AT THE TIME WHEN THE
ARBITRATION PROCEEDINGS ARE COMMENCED.

**OBJECTION CLAUSE**

THE CHARTERERS SHALL PROMPTLY NOTIFY THE OWNERS OF ANY OBJECTIONS TO
ANY CLAIM, INCLUDING DEMURRAGE, UNDER THIS CHARTERPARTY.
UNLESS OWNERS HAVE RECEIVED SUCH OBJECTION NOTIFICATION
WITHIN ~~60 90~~ 55 DAYS AFTER SUBMISSION OF CLAIM, THE CHARTERERS SHALL
BE D
EEMED TO HAVE WAIVED ANY OBJECTION TO THE CLAIM WHICH SHALL BE DEEMED
ACCEPTED BY CHRS AS PRESENTED

-----------------------------------------------------------------------

a) Owner shall take reasonable preventive measures to protect the Vessel, crew and cargo from the risks of piracy worldwide.  For transits involving navigation through known piracy zones, Owner shall notify Charterer – if Charterer requests so - regarding intended routing and precautions and shall thereafter keep Charterer informed of any deviation from that intended routing plan.

b) While Charterer's cargo is aboard, Owner shall ensure the Vessel participates in all relevant reporting programs of the UKMTO and Maritime Security Centre - Horn of Africa (MSC-HOA), and follows their guidance as well as industry guidance contained in the most recent version of the International Chamber of Shipping's "Best Management Practices to Deter Piracy in the Gulf of Aden and off the Coast of Somalia."  Should the voyage involve entry into the Gulf of Aden, Owner shall follow the guidance contained in "Advice to Masters" as promulgated by MSC-HOA and UKMTO.

c) If not already compensated in the agreed freight, costs of incremental bunkers consumed and additional sea passage time as a result of reasonable deviations for avoidance of piracy over and above conventional routing as stipulated by Worldscale shall be for Charterers' account. Additional sea passage time shall be valued at the agreed demurrage rate. Charterer's reimbursement of both shall be paid together with freight upon receipt of Owner's invoice and available supporting documentation, i.e. Master's deviation statement, and related bunker invoice for bunkers recently stemmed.

d) From the date of coming into force of the International Code for the Security of Ships and of Port Facilities and the relevant amendments to Chapter XI of SOLAS (ISPS Code) in relation to Vessel, Owner shall procure that both Vessel and "the Company" (as defined by the ISPS Code) shall comply with the requirements of the ISPS Code relating to Vessel and "the Company."  Upon request Owner shall provide a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) to Charterer.  Owner shall provide Charterer with the full style contact details of the Company Security Officer (CSO).

e) Charterer shall provide the CSO and the Ship Security Officer (SSO)/Master with their full style contact details and any other information Owner requires to comply with the ISPS Code.

f) Except as otherwise provided in this Charter Party, loss, damage, expense, excluding consequential loss, caused by failure on the part of Charterer to comply with this Clause shall be for Charterer's account and any delay caused by such failure shall be compensated at the demurrage rate.

g) Provided that the delay is not caused by Owner's failure to comply with its obligations under the ISPS Code, and that the measures imposed by the port facility or relevant authorities apply to all vessels in that port and not solely to Owner's Vessel, the following shall apply:

(i) Notwithstanding anything to the contrary provided in this Charter Party, Vessel shall be entitled to tender Notice of Readiness even if not cleared due to applicable security regulations or measures imposed by a port facility or any relevant authority under the ISPS Code.

(ii) Any delay resulting from measures imposed by a port facility or by any relevant authority under the ISPS Code shall count as laytime or time on demurrage if Vessel is on laytime or

demurrage. If the delay occurs before laytime has started or after laytime or time on demurrage has ceased to count, it shall be compensated by Charterer at one half the demurrage rate.

h) Notwithstanding anything to the contrary provided in this Charter Party, any additional costs or expenses not already allowed for in the Worldscale rate  solely arising out of or related to security regulations or measures required by the port facility or any relevant authority in accordance with the ISPS Code including, but not limited to, security guards, launch services, tug escorts, port security fees or taxes and inspections, unless such costs or expenses result solely from Owner's negligence, shall be shared equally between Owner and Charterer.  All measures required by Owner to comply with the Ship Security Plan shall be for Owner's account. Any additional security measures/costs and delays arising out of measures or regulations imposed by the port facility or relevant authorities under Solas/IMO/ISPC code as a result of the Vessel's last port of call (as was directed by the Charterer under this Charter Party) shall be for Charterer's account and any delay shall count as full laytime or time on demurrage if Vessel on demurrage.

i) If either party makes any payment which is for the other party's account according to this Clause, the other party shall indemnify the paying party.

**Jonas Patzwall**

---

| | |
|---|---|
| **From:** | Joshua Chong Yu Wit <Joshua@wellbred.com> |
| **Sent:** | Monday, April 26, 2021 12:40 AM |
| **To:** | Sebastien Kahmann |
| **Cc:** | Operations; WellBred Finance; Compliance |
| **Subject:** | RE:  MT JAG LEELA / WELLBRED / CP 25.04.2021 - CLEAN FIXTURE RECAP |
| **Attachments:** | Attached file_ China Oil TERMS (revised dec 2003).doc; EUROTANKERS - ISPS CLAUSE (1).docx; MT EUROBRAVE-WELLBRED TRADING DMCC - TERMS WITH PLEIADES AMENDMENTS.docx; Jag Leela_Q88 (Oil)_24Apr2021.doc |

```
GOOD DAY SEBASTIEN,

WE ARE PLEASED TO CONFIRM THE FOLLOWING FIXTURE ACCOUNT WELLBRED
WITH ALL SUBJECTS FULLY LIFTED AS SET OUT BELOW:

STRICTLY P+C
-----------------------------------------------------------------
                        (TITLE)

CHARTERER               : WELLBRED CAPITAL PTE LTD
                          30 CECIL STREET
                          #19-08 PRUDENTIAL TOWER
                          SINGAPORE 049712

                          OR IT'S NOMINEE

                          WELLBRED TRADING DMCC
                          OFFICE 2102, SABA 1 TOWER,
                          CLUSTER E, JLT, DUBAI, UAE

REGISTERED OWNERS       : THE GREAT EASTERN SHIPPING COMPANY LTD
                          OCEAN HOUSE, 143/A DR ANNIE BESANT ROAD, WORLI, WORLI,
                          MUMBAI - 400018

DISPONENT OWNER         : PENFIELD MARINE (UK) LTD
                          BECKET HOUSE, 36-37 OLD JEWRY,
                          LONDON EC2R 8DD, UNITED KINGDOM

COMMERCIAL OPERATOR     : PENFIELD TANKERS (AFRAMAX) LLC
                          200 PEQUOT AVENUE,
                          SOUTHPORT CT 06890
                          UNITED STATES

TECHNICAL OPERATOR      : THE GREAT EASTERN SHIPPING COMPANY LTD
                          OCEAN HOUSE, 143/A DR ANNIE BESANT ROAD, WORLI, WORLI,
                          MUMBAI - 400018

BROKER                  : MAVEN BROKERS PTE LTD

CO-BROKER               : MARANT SHIPPING AND TRADING S.A.

PRIVATE AND CONFIDENTIAL : YES

CHARTER PARTY           : ASBATANKVOY

DATED                   : 25 APRIL 2021
```

```
----------------------------------------------------------------
                        (VESSEL)

SHIP                     : JAG LEELA
SDWT                     : 105,525.20 MT
DRAFT                    : 15.02 M
LOA                      : 243.99 M
BEAM                     : 42.04 M
BUILT                    : 23RD SEPTEMBER 2011
FLAG                     : INDIA
CAPACITY AT 98 PCT       : 114,618.20 M3 EXCL SLOPS
SLOP CAPACITY AT 98 PCT  :   2,733.60 CBM
SLOP TANK AVAILABILITY   : YES
SBT/CBT                  : SBT
COW                      : YES
IGS                      : YES
TPC                      : 92.05 MT
BCM                      : 123.23 M
KTM                      : 50.405 M
COATINGS                 : MODIFIED EPOXY KCC/S EH 2350 (PARTIAL)
COILS                    : YES / SS
CLASS                    : AMERICAN BUREAU OF SHIPPING
DERRICKS/CRANES          : NIL / 2 X 15 TONNES PORT/STARBOARD
TYPE OF HULL             : DOUBLE HULL
SCNT                     : 58,839.59
PCRT                     : N/A
GRT                      : 57,249.00
LADEN SPEED              : ABOUT 12.5 KNOTS AGW WSNP
H+M VALUE                : USD 30,000,000
IMO NUMBER               : 9568184

1ST LAST CARGO/CHARTERER : FUEL OIL  / ARAMCO / AIN SUKHA-JEDDAH
2ND LAST CARGO/CHARTERER : FUEL OIL  /  PMI  / GALVESTON-AIN SUKHNA
3RD LAST CARGO/CHARTERER : CRUDE OIL / VALERO / CAYO ARCAS-TEXAS CITY

----------------------------------------------------------
                        (CARGO)

CARGO QUANTITY           : MINIMUM 80,000 METRIC TONNES, CHARTERERS' OPTION UP TO FULL
CARGO.
                           NO DEADFREIGHT FOR CHARTERER'S ACCOUNT PROVIDED MINIMUM
QUANTITY SUPPLIED.

GRADE                    : FUEL OIL
                           CHARTERERS WARRANT THAT THE CARGO DOES NOT ORIGINATE FROM
EITHER VENEZUELA OR IRAN
                           OR ANY OTHER COUNTRY THAT IS SANCTIONED BY EITEHR THE US OR
THE UN OR THE EU.
                           CHARTERERS TO PROVIDE OWNERS WITH SATISFACTORY EVIDENCE OF
THE ORIGIN OF THE INTENDED CARGO.

SEGREGATION              : MAXIMUM 1/2 GRADES WITHIN VESSEL'S NATURAL SEGREGATION.

HEAT                     : VESSEL TO MAINTAIN LOADED TEMPERATURE, MAXIMUM 135 DEGREES
FAHRENHEIT.
                           MAXIMUM LOADED TEMPERATURE NOT TO EXCEED 165 DEGREES
FAHRENHEIT.

----------------------------------------------------------------
                        (DATES)

LAYDAYS                  : 26-28 APRIL 2021 (00:01-23:59)
```

2

```
ITINERARY                   : PERFORMING OWNERS MATTERS FUJAIRAH

ETA LOADPORT                : LOAD READY FUJAIRAH 27 APRIL 2021 (12:00)

---------------------------------------------------------
                          (GEOGRAPHICAL)

LOADING RANGE               : 1 PORT(S)
                              FUJAIRAH

DISCHARGING RANGE           : 1 PORT(S) / SHIP-TO-SHIP
                              SINGAPORE - TANJUNG PELEPAS

---------------------------------------------------------
                          (FINANCIAL)

FREIGHT RATE                : WORLDSCALE 100.0

                            +++2021 FLAT RATE TO APPLY+++

RATE TO BE ALL INCLUSIVE BUT NOT LIMITED TO ARMED GUARDS, DEVIATION IF ANY, AWRP, LOSS OF
HIRE, CREW WAR BONUS, K&R.
ANY INCREASE OF HULL AND MACHINERY 'WAR RISK PREMIUMS' OVER AND ABOVE THOSE IN EFFECT ON
THE DATE OF THE CHARTERPARTY, WILL BE FOR CHARTERER'S ACCOUNT.

OVERAGE                     : 50% OVERAGE TO APPLY IN EXCESS OF 80,000 METRIC TONNES

DEMURRAGE RATE              : USD ████ PDPR

PAYMENT TERMS               : **FREIGHT AND ANY UNDISPUTED DEMURRAGE SHALL BE PAID BBB**

OWNERS BANKING DETAILS   : FREIGHT PAYABLE TO OWNERS' DESIGNATED BANK ACCOUNT IN UNITED
STATES DOLLARS VIA TELEGRAPHIC TRANSFER:

         BENEFICIARY BANK : JPMORGAN CHASE BANK, N.A.
                  ADDRESS : NEW YORK, NEW YORK 10017
              ABA ROUTING : ████0021
              BENEFICIARY : PENFIELD TANKERS AFRAMAX LLC
           ACCOUNT NUMBER : ████2172

US DOLLAR FUNDS TRANSFER INSTRUCTIONS OUTSIDE THE UNITED STATES :

         BENEFICIARY BANK : JPMORGAN CHASE BANK, N.A.
                  ADDRESS : NEW YORK, NEW YORK 10017
                    SWIFT : ████US33
              BENEFICIARY : PENFIELD TANKERS AFRAMAX LLC
           ACCOUNT NUMBER : ████2172

LAYTIME                     : 96 HOURS SHINC

COMMISSION BREAKDOWN AS FOLLOWS:

- 2.50 PCT ADDRESS COMMISSION TO CHARTERERS ON FREIGHT/DEADFREIGHT/DEMURRAGE
- 1.25 PCT BROKERAGE COMMISSION FOR MAVEN BROKERS PTE LTD ON
FREIGHT/DEADFREIGHT/DEMURRAGE
- 1.25 PCT BROKERAGE COMMISSION FOR MARANT SHIPPING AND TRADING S.A. ON
FREIGHT/DEADFREIGHT/DEMURRAGE

---------------------------------------------------------
                          (TERMS)
```

- CP SPEED : ABOUT 12.5KTS WVSP

- IF VESSEL LOAD/DISCHARGE VIA STS CHARTERERS TO PROVIDE AT THEIR TIME AND EXPENSES ALL NECCESSARY EQUIPEMENTS TO
 CARRY OUT SUCH OPERATION AND TIME TO COUNT IN FULL WPON. CHARTERERS TO PAY FOR ALL STS COSTS INCLUDING AGENCY FEES.

- CHOPT DISCH + RELOAD IS NOT ALLOWEDUNDER THE TERMS OF THIS CP

   PANDEMIC CLAUSE (VOYAGE CHARTER)

   1. PROVIDED ALWAYS THAT THE CAUSE AND THE EXTENT OF THE DELAY COULD NOT REASONABLY
      HAVE BEEN PREVENTED BY OWNER, IF:
      (I) THE VESSEL IS DELAYED IN BERTHING, LOADING AND/OR DISCHARGING UNDER AND DURING
      THIS CHARTER DUE TO OFFICIAL MEASURES RELATED TO THE CORONA VIRUS OUTBREAK (ALL
      REFERENCES TO CORONA VIRUS SHALL MEAN SARS-COV-2/COVID-19), INCLUDING VESSEL
      QUARANTINE, AND
      (II) THE DELAY ARISES AT ANY OF CHARTERER'S NOMINATED PORTS OR PLACES OF OPERATION
      UNDER AND DURING THIS CHARTER,
             THEN THE TIME USED SHALL COUNT AS LAYTIME OR TIME ON DEMURRAGE.
   2. SHOULD CHARTERER'S NOMINATED PORT OR PLACE OF OPERATIONS BE CLOSED DUE TO CORONA
      VIRUS OR CORONA VIRUS RELATED CAUSES, ALL TIME WAITING CAUSED THEREBY SHALL COUNT
      AS USED LAYTIME AND/OR TIME ON DEMURRAGE.

   3. NOTWITHSTANDING THE FOREGOING, ANY DELAY SHALL NOT COUNT AS LAYTIME AND/OR TIME ON
      DEMURRAGE UNDER THIS CHARTER TO THE EXTENT THAT IT IS CAUSED OR PROLONGED BECAUSE
      OF MEASURES OR RESTRICTIONS WHICH APPLY TO, OR ARE DIRECTED AT THE VESSEL OR HER
      CREW EITHER DUE TO:  (I) THE CREW HAVING CONTRACTED, OR BEING SUSPECTED OF HAVING
      CONTRACTED, CORONA VIRUS, OR (II) OFFICIAL MEASURES OR RESTRICTIONS AT THE
      NOMINATED PORT CONCERNING COUNTRIES, PORTS OR OTHER LOCATIONS THE VESSEL AND/OR
      CREW HAS VISITED, CALLED AT OR TRADED/TRANSITED THROUGH AT ANY TIME PRIOR TO
      TENDERING NOR AT THE FIRST LOAD PORT, OR THEREAFTER IF FOR OWNERS MATTERS.

   4. ANY ADDITIONAL COSTS AND EXPENSES RELATED TO DISEASE PREVENTION OR CONTROL AT ANY
      LOAD OR DISCHARGE PORT(S), INCLUDING BUT NOT LIMITED TO SCREENING, CLEANING,
      FUMIGATING AND/OR QUARANTINING THE VESSEL AND ITS CREW SHALL BE FOR CHARTERER'S
      ACCOUNT, UNLESS ATTRIBUTABLE TO ACTUAL INFECTION (OF ANY TYPE) ABOARD THE VESSEL IN
      WHICH CASE IT IS SOLELY FOR OWNER'S ACCOUNT.

   5. ANY DELAY, COSTS OR EXPENSES CAUSED OR INCURRED IN RELATION TO CORONA VIRUS, OR
      SUSPECTED CORONA VIRUS, ONBOARD THE VESSEL SHALL BE FOR OWNER'S ACCOUNT.


- OWNERS OPTION TO BUNKER ON LADEN VOYAGE WITH CHARTERERS' PRIOR CONSENT.

- WS T/C TO APPLY, UNLESS AGREED OTHERWISE HEREIN

- MAX 3 HOURS CARGO DOCUMENTATION TIME FOR OWNERS' ACCOUNT

- ANY TAXES AND/OR DUES ON CARGOES AND/OR FREIGHT TO BE FOR CHARTERERS' ACCOUNT

-  BIMCO SANCTIONS CLAUSE FOR VOYAGE CHARTER PARTIES

BIMCO SANCTIONS CLAUSE FOR VOYAGE CHARTER PARTIES 2020*
(A) FOR THE PURPOSES OF THIS CLAUSE:

"SANCTIONED ACTIVITY" MEANS ANY ACTIVITY, SERVICE, CARRIAGE, TRADE OR VOYAGE SUBJECT TO
SANCTIONS IMPOSED BY A SANCTIONING AUTHORITY.

"SANCTIONING AUTHORITY" MEANS THE UNITED NATIONS, EUROPEAN UNION, UNITED KINGDOM, UNITED
STATES OF AMERICA OR ANY OTHER APPLICABLE COMPETENT AUTHORITY OR GOVERNMENT.

"SANCTIONED PARTY" MEANS ANY PERSONS, ENTITIES, BODIES, OR VESSELS DESIGNATED BY A SANCTIONING AUTHORITY.

(B) OWNERS WARRANT THAT AT THE DATE OF THIS CHARTER PARTY AND THROUGHOUT ITS DURATION THEY, THE REGISTERED OWNERS, BAREBOAT CHARTERERS, INTERMEDIATE DISPONENT OWNERS, MANAGERS, THE VESSEL AND ANY SUBSTITUTE ARE NOT A SANCTIONED PARTY.

(C) CHARTERERS WARRANT THAT AT THE DATE OF THIS CHARTER PARTY AND THROUGHOUT ITS DURATION THEY AND ANY SUBCHARTERERS, SHIPPERS, RECEIVERS AND CARGO INTERESTS ARE NOT A SANCTIONED PARTY.

(D) IF AT ANY TIME EITHER PARTY IS IN BREACH OF SUBCLAUSE (B) OR (C) ABOVE THEN THE PARTY NOT IN BREACH MAY TERMINATE AND/OR CLAIM DAMAGES RESULTING FROM THE BREACH.

(E) IF PERFORMANCE OF THIS CHARTER PARTY INVOLVES A SANCTIONED PARTY OR A SANCTIONED ACTIVITY, WITHOUT PREJUDICE TO ANY OTHER RIGHTS THAT MAY BE AVAILABLE IN SUBCLAUSE (D) ABOVE:

(I) IF LOADING HAS NOT COMMENCED, OWNERS MAY CANCEL THIS CHARTER PARTY; OR

(II) IF THE VOYAGE OR THE LOADING HAS COMMENCED, OWNERS MAY REFUSE TO PROCEED AND DISCHARGE ANY CARGO ALREADY LOADED AT ANY SAFE PORT OR PLACE OF THEIR CHOICE (INCLUDING THE PORT OR PLACE OF LOADING) IN COMPLETE FULFILMENT OF THIS CHARTER PARTY,

PROVIDED ALWAYS THAT IF THIS CHARTER PARTY PROVIDES THAT LOADING AND/OR DISCHARGING IS TO TAKE PLACE WITHIN A RANGE OF PORTS OR PLACES THAT DO NOT INVOLVE A SANCTIONED PARTY OR A SANCTIONED ACTIVITY, OWNERS MUST FIRST REQUEST CHARTERERS TO NOMINATE AN ALTERNATIVE PORT OR PLACE AND MAY CANCEL THE CHARTER PARTY OR REFUSE TO PROCEED ON THE VOYAGE ONLY IF SUCH NOMINATION IS NOT MADE WITHIN FORTY-EIGHT (48) HOURS AFTER THE REQUEST.

(F) IF IN COMPLIANCE WITH SUBCLAUSE (E) ABOVE ANYTHING IS DONE OR NOT DONE, SUCH SHALL NOT BE DEEMED A DEVIATION, BUT SHALL BE CONSIDERED DUE FULFILMENT OF THIS CHARTER PARTY.

(G) CHARTERERS SHALL INDEMNIFY OWNERS AGAINST ANY AND ALL CLAIMS BROUGHT BY THE OWNERS OF THE CARGO AND/OR THE HOLDERS OF BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE AND/OR SUBCHARTERERS AGAINST OWNERS BY REASON OF  OWNERS' COMPLIANCE WITH SUCH ALTERNATIVE VOYAGE ORDERS OR DELIVERY OF THE CARGO IN ACCORDANCE WITH SUBCLAUSE (E) ABOVE.

(H) CHARTERERS SHALL PROCURE THAT THIS CLAUSE SHALL BE INCORPORATED INTO ALL SUB-CHARTERS AND BILLS OF LADING, WAYBILLS OR OTHER DOCUMENTS EVIDENCING CONTRACTS OF CARRIAGE ISSUED PURSUANT TO THIS CHARTER PARTY.


OWNERS' CORONA-VIRUS CLAUSE TO APPLY

ALL TAXES/DUES ON FREIGHT AND/OR CARGO TO BE FOR C/A AND SETTLED DIRECTLY BY THEM

ONLY NON-NEGOTIABLE B/LS TO BE ISSUED UNDER THIS CP.

OTHERWISE TERMS AS PER THE ATTACHMENTS!


++ END RECAP ++


BEST REGARDS
JOSHUA
WELLBRED